Ketan DESAI, Plaintiff–Appellant,

v.

SSM HEALTH CARE, et al.,
Defendants–Respondents.

No. 62363.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 2, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 9, 1993.

Michael A. Gross, and Cofman & Townsley, Stuart Cofman, St. Louis, for plaintiff-appellant.

Brinker, Doyen, & Kovacs, P.C., Paul Kovacs, David Ott and Dean Gallego, St. Louis, for defendants-respondents.

Before CRANE, P.J., and KAROHL and CRAKAN, JJ.

KAROHL, Judge.

A jury awarded plaintiff, Dr. Ketan Desai, damages of $75,000 for false imprisonment in his suit against SSM Health Care System, d/b/a Cardinal Glennon Children's Hospital, and two parking lot security guards. The trial court granted defendants' motion for judgment notwithstanding the verdict, and plaintiff appealed. Desai contends the trial court erred in (1) granting JNOV on the false imprisonment claim, (2) granting defendants' motions to dismiss a punitive damage claim at the close of plaintiff's evidence, and (3) granting defendants' motions for partial summary judgment on a malicious prosecution claim following plaintiff's acquittal on a trespass charge. We affirm in part, reverse in part, and remand with directions.

Dr. Desai completed medical school and a surgical residency in India, his place of birth. In 1987, following a fellowship in immunology at the Mayo Clinic, Desai came to St. Louis University for a residency and doctoral program. As part of his graduate studies, Desai worked at St. Louis University Medical School's Institute of Molecular Virology. He was under the tutelage of a doctor whose office was in Cardinal Glennon Children's Hospital, located in close proximity to the Institute. At approximately 10:30 p.m. on October 24, 1989, Desai was walking across the parking lot of Cardinal Glennon, apparently a shortcut, on his way to the Institute. He planned to tend to his research project and get a card for photocopying certain articles for his supervising doctor at Cardinal Glennon. Desai was wearing a blue jogging suit and tennis shoes, and he carried only his papers to copy and his keys. He did not have any identification.

The evidence, presented in a light most favorable to the verdict, is as follows. Gary Mealey and William Windam were both on duty as security guards for the Cardinal Glennon parking lot that evening. As Desai walked across the lot, Mealey stopped Desai, who heard the guard say, "Hey, you minority shit," before asking Desai to identify himself. Desai asked the guard to be more polite and explained that he was a doctor on his way to the Institute of Molecular Virology. Upon being asked for identification and being told that he was trespassing, Desai argued and waved his hands. The two guards grabbed Desai's arms and Windam shoved Desai's head against the trunk of a car. They handcuffed Desai and escorted him back to the security office. Security supervisor Earl Bolton joined them.

Mealey contacted a nursing supervisor who instructed the guards to release Desai upon verification that he was a doctor employed at St. Louis University Hospital. Someone called the St. Louis University campus police, who verified that a Dr. Ketan Desai was affiliated with the Institute. The handcuffs were removed. Shortly thereafter, a St. Louis University officer asked Desai to apologize to Mealey, and Desai in turn said he had no reason to apologize. Instead, Desai asked that the police be called because he had been assaulted by Windam. Desai was immediately re-handcuffed, and when the St. Louis City police arrived he was arrested for trespassing at the behest of the security guards. The guards testified their purpose in having Desai arrested was to avoid getting into trouble. Desai was not released from

jail until noon the following day. Desai suffered headaches and seizures from the time of his arrest through the time of trial.

Desai filed a four count action against the security guards and their employer asking for actual and punitive damages for false imprisonment, and actual damages for battery and malicious prosecution. On June 10, 1991, defendants' motion for partial summary judgment was granted concerning the malicious prosecution count. The motion was supported with an affidavit of a city counselor attesting to probable cause for prosecuting Desai.

The trial on the remaining counts began on June 8, 1992. At the close of plaintiff's evidence on June 10, the trial court granted defendants' motion to dismiss the claim for punitive damages. On June 11, 1992, the jury returned a verdict in favor of Desai and awarded damages in the amount of $75,000 on the false imprisonment claim, and found in favor of defendants on the battery claim. On July 2, 1992, the trial court sustained defendants' motions for judgment notwithstanding the verdict and for directed verdict, the latter of which had been taken under submission during the trial. Following denial of Desai's motion to enter judgment on the verdict or for new trial, this appeal ensued.

■ In reviewing Desai's first point, whether the trial court erred in granting judgment notwithstanding the verdict, Desai is entitled to the benefit of all reasonable inferences favorable to the verdict, and evidence unfavorable to the verdict is disregarded. *Duren v. Kunkel*, 814 S.W.2d 935, 936 (Mo. banc 1991), *Stark v. American Bakeries Co.*, 647 S.W.2d 119, 121 (Mo. banc 1983). We need not, however, disregard all evidence unfavorable to plaintiff; we must disregard only defendants' evidence unfavorable to plaintiff. *Missouri Highway and Transp. Comm'n v. Keeley*, 780 S.W.2d 84, 87 (Mo. App.1989).

■ The first issue is whether Desai met his burden of establishing his case by substantial evidence. *Id.* at 87. A false arrest or false imprisonment occurs when there is confinement without legal justification by the wrongdoer of the person wronged. *Day v. Wells Fargo Guard Serv. Co.*, 711 S.W.2d 503, 504–505 (Mo. banc 1986); *Rustici v. Weidemeyer*, 673 S.W.2d 762, 767 (Mo. banc 1984); *Warrem v. Parrish*, 436 S.W.2d 670, 672 (Mo.1969). The constituent elements of false imprisonment are the detention or restraint of the plaintiff against his will, and the unlawfulness of the detention or restraint. Liability attaches where it is shown that defendants instigated, caused or procured the arrest. *Smith v. Lewis*, 669 S.W.2d 558, 562 (Mo.App.1983).

■ The evidence concerning what transpired from the time Desai was taken to the security office to the time the police arrested him includes the following testimony, some of which was read into the record from depositions:

[Plaintiff's Attorney]: So it was verified [Desai] was, in fact, a doctor at St. Louis University?

[Defendant Windam]: Yes.

Q: And, someone took the handcuffs off him to let him go; is that correct?

A: Yes

Q: Who did that?

A: Officer Mealey.

Q: Were the cuffs subsequently placed back on him?

A: Yes, they were.

Q: Why was that?

A: *Because Dr. Desai had said, stated that I had assaulted him* and he pointed directly at me.

. . . . .

Q: So once he did that, did you direct that he be recuffed?

A: Yes, I did.

Q: What did you say and to whom?

A: I told Officer Mealey to place him under arrest for trespassing.

Q: Why did you do that? ...

A: To have a report on the incident.

\* \* \* \* \* \*

Q: Well, are you saying *the only reason* you wanted to do it was to affect a police report?

A: Yes.

Q: Did you realize the police report can be made out without someone being arrested?

A: No.

\* \* \* \* \* \*

Q: You didn't want to get in trouble, did you?

A: Right.

Q: That's why you did it, isn't it?

A: Basically, *yes.*

\* \* \* \* \* \*

Q: You were going to have Dr. Desai *who you knew was Dr. Desai* rearrested, taken to the police department, booked, finger printed, mugshots, and left in jail for twelve hours *because you didn't want to get in trouble?*

A: Yes. (Our emphasis).

Defendants' own testimony provides a jury with sufficient evidence to conclude Desai was intentionally restrained unlawfully, for private reasons of the individual defendant and not for the reason he was a trespasser. The evidence would support an inference the guards knew he was not a trespasser. Plaintiff did not give any testimony to negate such a conclusion. He stated he usually avoided Cardinal Glennon's parking lot, believing he had no right to use it, unless he had business with his supervising doctor who had an office in Cardinal Glennon, as he did on October 24, 1989. On these facts the trial court's finding "that as a matter of law there was probable cause for the restraint of plaintiff" is erroneous as a matter of fact and law when the evidence is viewed in the light of the verdict.

Defendants attempt to support this ruling by citing statutes enabling the St. Louis City Police Department to regulate licensed security officers and rules promulgated by the Board of Police Commissioners specifying security officers have certain police powers. This argument ignores the conduct of the guards in re-handcuffing Desai and having him arrested for trespassing for their own reasons after he was identified and released. This conduct supported a finding the re-arrest amounted to a false and self-serving restraint. Defendants' response that Desai was never released, and that the entire transaction amounted to a justified arrest, is at most a question of fact and unsupported by the verdict.

There is evidence in the record from which a jury could find that defendants lacked justification to re-handcuff Desai and have the police arrest him for trespassing. By defendants' own testimony, Desai would have been released if he did not accuse one of the guards of assaulting him. Defendants' argument ignores the difference in arrest based on a reasonable belief Dr. Desai trespassed with their need to justify their manner of detaining him and allegedly assaulting him. Having reviewed the entire record, we find substantial evidence to support a jury finding Desai was subject to confinement without justification when re-handcuffed, arrested and held in jail overnight, and that such arrest was brought on by defendants.

■ Plaintiff's second point is the trial court erred in sustaining defendants' motion to dismiss his punitive damages claim for false imprisonment and in refusing to submit the issue to the jury in that the conduct of one or more defendants in re-arresting him in the security building was outrageous and reflected evil motive and reckless indifference to his rights. Again, we agree. Defendants first argue plaintiff's tendered instruction for punitive damages was erroneous, and therefore the trial court cannot be found to have committed reversible error in refusing it. The issue before us is whether the trial court erred in dismissing the punitive damages count, not whether it erred in refusing the tendered instruction after the count was

already dismissed. We note, however, that Desai's instruction was patterned after MAI 10.01 (1990 revision) and MAI 10.03 (1983 revision). The only variation from MAI 10.01 is the use of "a Defendant" or "any Defendant" in place of "Defendant."

Defendants rely on *Saunders v. Flippo*, 639 S.W.2d 411, 412 (Mo.App.1982), wherein substitution of the word "Defendants" for "Defendant" and failure to add MAI 10.03 to a 10.01 instruction where the claim for punitive damages was submitted for multiple defendants resulted in reversal of the award. *Saunders* stands for the proposition that MAI 10.03 must also be used if a claim for punitive damages is offered against multiple defendants. In the present case, plaintiff's insertion of "a" and "any" simply adds clarity in light of the fact there are multiple defendants against some or all of whom punitive damages may or may not be awarded.

■ The real issue is whether the record contains a sufficient basis for permitting the jury to consider whether defendants' acts were outrageous because of their evil motive or reckless indifference to the rights of others to support an award of punitive damages. *Burnett v. Griffith*, 769 S.W.2d 780, 789 (Mo. banc 1989). Plaintiff testified defendant Mealey addressed him as a "minority shit" and while in the office warned him that as a foreigner he should not be expected to be treated like any other American, and that he did not have civil rights. Desai testified that while he was initially being restrained, Windam placed his hand on the nape of Desai's neck while he and Mealey had Desai's arms pinned behind his back, and smacked his head down on the trunk of a parked car. Multiple witnesses testified Desai was asked to apologize to Mealey after the handcuffs were removed, and upon his refusal to do so and assertion that Windam assaulted him, Desai was re-handcuffed. Defendant Windam testified Desai would have been released if he had not accused Windam of assault. Defendant Mealey testified Desai was arrested and jailed by the police on trespassing charges so that the police could sort out whether there was an assault. We hold the trial court erred in dismissing the punitive damages count and in refusing to submit the issue to the jury as to the false imprisonment claim.

Finally, Desai argues the trial court erred in granting the defendants' motion for partial summary judgment on the claim of malicious prosecution in that the affidavit offered in support of the motion "failed to negate as a matter of law the plaintiff's allegation that there had been no probable cause to prosecute him for trespass."

■ A plaintiff must plead and prove the following six elements to prevail on a malicious prosecution action: (1) commencement of a prosecution against the plaintiff, (2) instigation by the defendant, (3) termination of the proceeding in favor of the plaintiff, (4) want of probable cause for the prosecution, (5) defendant's conduct was actuated by malice, and (6) plaintiff was damaged. *Sanders v. Daniel International Corp.*, 682 S.W.2d 803, 807 (Mo. banc 1984).

On May 20, 1991, defendants filed a motion for partial summary judgment supported by an affidavit signed by a prosecuting attorney which stated, in part:

2. That I filed an information against Ketan Desai for alleged trespass occurring on October 24, 1989 on a parking lot of Cardinal Glennon Children's Hospital, a true and accurate copy of which is attached hereto.

3. That according to the information and evidence presented to me, there was probable cause to issue an information against Ketan Desai on this charge.

4. That at no time during the proceedings of this prosecution did I have reason to doubt the existence of probable cause to prosecute this charge for trespass against Ketan Desai.

Desai filed a "motion" in opposition to partial summary judgment and supporting memorandum. He referred to depositions of the individual defendants but offered no opposing

evidence as summary judgment facts and the depositions are not included in the legal file. There is no motion transcript in the record.

 A moving party defending a lawsuit may establish a right to summary judgment by establishing facts that negate any one of the elements of plaintiff's cause of action. *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 381 (1993). The burden then shifts to the non-moving party, who "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule 74.04, shall set forth specific facts showing that there is a genuine issue for trial." *Id.* 854 S.W.2d at 381, quoting rule 74.04(e).

 Defendants maintain the sound position that if a charge is initiated by a sworn information of a prosecuting attorney, then a prima facie showing has been made that probable cause for the initiating prosecution existed. *Perry v. Dayton Hudson Corp.*, 789 S.W.2d 837, 841 (Mo.App.1990). Desai argues that the filing of an information by a prosecuting attorney on his own information and belief is prima facie evidence of probable cause, but not when the information is predicated on the affidavit of the complaining witness. *Ulmer v. Associated Dry Goods Corp.*, 823 F.2d 1278, 1282 (8th Cir.1987). The prima facie showing is conclusive, however, unless rebutted by evidence that false testimony was the basis of the charge and the falsity was discoverable upon reasonable investigation. *Perry*, 789 S.W.2d at 841.

Desai alludes to depositions of defendants which he claims would show that the prosecutor relied on reports containing defendants' false statements. If true, he argues, the presumption of probable cause fails, the falsity is subject to proof as part of the cause of action, hence, summary judgment is error. But, Desai has not furnished this court with the depositions. Accordingly, we cannot review this point on the merits to determine whether the prosecutor was dealing with false reports when he found probable cause and issued an information. On the record before us, the direct evidence of probable cause in the form of the prosecutor's affidavit and the rebuttable presumption of probable cause was not opposed when summary judgment was entered. Point denied.

In conclusion, we reverse the judgment notwithstanding the verdict on the false imprisonment claim, remand for a trial on the punitive damages claim, and affirm the grant of summary judgment on the malicious prosecution claim.

CRANE, P.J., and CRAHAN, J., concur.