R.J. JACOBS, Plaintiff/Respondent,

v.

Barbara BONSER and Richard Graff, Defendants/Appellants.

No. ED 77408.

Missouri Court of Appeals, Eastern District, Division Four.

April 3, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 24, 2001.

David M. Korum, Law office of the Janis, Korum & Jones, Clayton, MO, for Appellant.

Richard J. Jacobs, Clayton, MO, pro se.

SHERRI B. SULLIVAN, Judge.

Barbara Bonser (Bonser) and Richard Graff (Graff) (collectively Appellants) appeal from the trial court's judgment entered on the jury verdict awarding R.J. Jacobs (Respondent or Jacobs) no actual damages and $500.00 punitive damages on his battery claim against Bonser, $26.15 actual damages and $3,500.00 punitive damages from each Appellant on his false imprisonment claim, $2,795.00 from both Appellants jointly on his malicious prosecution claim, and costs. They claim the trial court erred in denying Appellants' motion for judgment notwithstanding the verdict and/or in the alternative for new trial. We reverse and remand the punitive damage award on the battery claim with directions. We affirm the remainder of the judgment.

### Facts

On September 4, 1994, Bonser arrived in the Lambert St. Louis International Airport returning from a trip. Graff arrived at the airport to pick up Bonser. Appellants went to the baggage claim area to retrieve Bonser's luggage. Jacobs was also in the baggage claim area waiting to meet someone. Bonser sat next to Jacobs and lit a cigarette. Smoking is not allowed in this area. Jacobs asked Bonser to extinguish her cigarette. Bonser did not. Even after Jacobs told Bonser he had a serious health reaction to cigarette smoke, Bonser blew smoke in his face. Bonser continued to smoke and attempted to flick the cigarette's ashes into the receptacle between her and Jacobs's seats. However, Jacobs had put his hand over the receptacle and the ashes landed on his hand. Jacobs jerked his hand back and allegedly inadvertently struck Bonser in the shoulder area. Bonser stated that Jacobs had "crappies" on his hand anyway. Bonser

then stated that she worked in a firm with five lawyers and she should file a claim against Jacobs.

Graff went to summon the airport police. However, before he did so, he too lit a cigarette and deliberately blew smoke into Jacobs's face. Jacobs testified that Bonser called him a son of a bitch, and said that nobody was going to tell her where she could or could not smoke. Jacobs also testified that Bonser emitted a stream of profanities. After being summoned and told by Appellants that Jacobs assaulted Bonser, Jacobs was arrested for alleged assault, handcuffed and eventually taken to the county police station. Jacobs was released that evening. A warrant was issued on a charge of third-degree assault against Jacobs. Jacobs was prosecuted, and initially tried in January, 1997. This trial resulted in a mistrial. Jacobs was retried in September, 1997. The jury returned a verdict of not guilty.

### Proceedings Below

Jacobs filed suit against Bonser and Graff in September, 1997, alleging malicious prosecution, false arrest, assault and battery. After the close of the evidence, counsel for Appellants moved for a directed verdict on the malicious prosecution and false arrest claims, which was denied. After trial, the jury found in favor of Jacobs on the malicious prosecution and false arrest claims against both Bonser and Graff, and on the battery claim against Bonser. All other claims were found in favor of Appellants.

After the jury returned its verdict, counsel for Appellants filed a motion for judgment notwithstanding the verdict and/or new trial. Jacobs maintains this motion was not signed by Appellants' attorney, as

required by Rule 55.03(a).[1] Jacobs filed a motion to strike for lack of jurisdiction because of this alleged defect. Appellants filed no response to this motion. The trial court did not rule on Jacobs's motion. Appellants' motion was not ruled on within ninety days, and thus was deemed denied. Appellants timely filed this appeal.

### Points on Appeal

In their first point on appeal, Appellants claim the trial court erred in submitting the punitive damages instruction and in denying Appellants' motion for judgment notwithstanding the verdict and/or in the alternative for new trial on Jacobs's claim of battery against Bonser because there was no evidence of an evil motive or reckless disregard for the rights of others, and the jury found in favor of Jacobs and awarded punitive damages but no actual damages, thereby causing the verdicts to self-destruct for being inconsistent.

This point can actually be subdivided into two points: (1) the trial court erred in submitting the punitive damages instruction *and* in denying Appellants' motion for judgment notwithstanding the verdict and/or in the alternative for new trial, because there was no evidence of an evil motive or reckless disregard for the rights of others, and (2) the trial court erred in denying Appellants' motion for judgment notwithstanding the verdict and/or in the alternative for new trial because the jury found in favor of Jacobs and awarded punitive damages but no actual damages, thereby causing the verdicts to self-destruct for being inconsistent.

An initial issue to be addressed regarding this point is Jacobs's argument that no valid motion for judgment notwithstanding the verdict and/or in the alternative for new trial was ever filed because Appellants' attorney did not sign it, as required by Rule 55 .03(a). Accordingly, there is nothing preserved for review. After review of this motion in the record, we find that Appellants' attorney did indeed sign the motion. We also find that Jacobs's argument that this signature is unlike other signatures made by Appellants' attorney, and therefore must have been made by a stranger, to be wholly without merit.

■■ Returning to the point at hand, we find the second part of this point dispositive. In reviewing the submissibility of the issue of punitive damages, we review the evidence in the light most favorable to submissibility. *Carpenter v. Chrysler Corp.*, 853 S.W.2d 346, 364 (Mo. App. E.D.1993). Punitive damages are appropriate only where the conduct of defendant is outrageous because of defendant's evil motive or reckless indifference to the rights of others. *Id.* However, without an award of actual damages, there can be no award of punitive damages. *Forbes v. Forbes*, 987 S.W.2d 468, 469 (Mo.App. E.D. 1999). In the instant case, the jury found that Jacobs suffered no actual damages as a result of the alleged battery, and thus awarded none, but did award punitive damages. The trial court should have entered a judgment in favor of Bonser on the issue of punitive damages on Jacobs's battery claim, notwithstanding the jury's verdict. *See id.*

Jacobs maintains that Appellants' failure to challenge the consistency of the jury's verdict before it was discharged waives Appellants' right to judgment notwithstanding the verdict. Appellants claim that under *Teschner v. Physicians Radiology*, 761 S.W.2d 665 (Mo.App. E.D.1988), their failure to challenge does not waive their right. In *Teschner*, this Court recognized the longstanding rule that a plain-

**1.** All rule references are to Mo. R. Civ. P.2001, unless otherwise indicated.

tiff's right to recover for the loss of consortium of his spouse is derivative only, so that if the spouse has no valid claim for personal injuries, the plaintiff cannot recover special damages flowing therefrom.[2] The *Teschner* jury found the spouse to have no valid claim for personal injuries. We held that the defendants' failure to challenge the inconsistent verdict for the plaintiff wife on her loss of consortium claim before the jury was discharged did not waive the defendants' right to judgment notwithstanding the verdict to which the defendants were entitled when the jury found no damages as to husband. We reasoned that after the jury returned a verdict of no damages as to the husband, the defendants were entitled to judgment as a matter of law on the plaintiff wife's consortium claim. *Id.* at 667. After the defendants were entitled to a judgment notwithstanding the verdict, the *plaintiff* became the party aggrieved by the inconsistent verdicts and carried the burden of objecting. *Id.*, citing *Burnett v. Griffith*, 739 S.W.2d 712, 715 (Mo.banc 1987) (emphasis added). The plaintiff wife failed to object to the jury's verdict before it was discharged, and thus the trial court denied her motion for new trial based on the inconsistent verdict. In conclusion, this Court found the trial court correctly granted the defendants' motion for judgment notwithstanding the verdict, even though they failed to challenge the jury's inconsistent verdict before they were discharged.

Jacobs claims *Teschner* is not applicable to the instant case, because its rule only applies to inconsistent verdicts involving loss of consortium claims. We find no authority for that proposition. In fact, this rule of law applied in a case involving respondeat superior. *Burnett v. Griffith*, cited by *Teschner*, involved an action against a master and a servant based only upon respondeat superior. 739 S.W.2d 712 (Mo.banc 1987). Under the law of respondeat superior, a finding of no fault against the servant precluded a verdict against the master, which is precisely the verdict the jury had returned. Although the defendant employer did not object to the verdict before the jury was discharged, the trial court found that it did not need to because as soon as the jury returned its inconsistent verdict, the defendant employer was entitled to judgment as a matter of law based on the longstanding doctrine of respondeat superior. *Id.* at 715.

Another case of note is *O'Brien v. Mobil Oil Corp.*, 749 S.W.2d 457 (Mo.App. E.D. 1988). In *O'Brien*, the trial court sua sponte raised the issue of inconsistent verdict, in that the jury returned an award of punitive damages but no actual damages on the plaintiff's false arrest claim, before it discharged the jury. The court asked the parties what they would like to do about the inconsistent verdict. *Id.* at 457–458. The plaintiff requested that the jury be polled, while defendants requested a verdict in their favor. *Id.* at 458. The trial court then discharged the jury. Post-trial motions were filed by the plaintiff requesting correction of the verdict or alternatively a new trial raising the issue of the inconsistency of the verdict. *Id.* The trial court denied the motion. In addition, the trial court granted the defendants' motion for judgment notwithstanding the verdict. *Id.*

■ In the instant case, we find that the trial court should have granted Appellants' motion for judgment notwithstanding the verdict on the issue of punitive damages. It is a well accepted doctrine of law that no punitive damages can be awarded absent

---

**2.** This rule is similar to the one at issue in the instant case, that no punitive damages can be awarded on a claim when no actual damages have been awarded.

an award of actual damages. *Id.* Accordingly, as soon as the jury in this case returned its verdict awarding punitive, but no actual, damages to Jacobs, Appellants were entitled to judgment as a matter of law. By not objecting to the verdict before the jury was discharged, Appellants did not waive their right to a judgment notwithstanding the verdict, under *Teschner* and *Burnett.* On the contrary, the burden fell upon Jacobs to request the court to instruct the jury to return an award of nominal damages if it had difficulty assessing a dollar amount for actual damages. *See Teschner,* 761 S.W.2d at 667. Jacobs did not carry this burden, and therefore waived his right to assert on appeal that the trial court should have instructed the jury on nominal damages.

Jacobs cites *Wright v. Jasper's Italian Restaurant,* 672 F.Supp. 424 (W.D.Mo. 1987), for his proposition that this Court should set aside the jury's award of no actual damages and direct the trial court to enter an award of nominal damages. *Wright* involved construction workers who filed suit against restaurant employees for assault and false imprisonment. The jury found for the plaintiffs and awarded punitive damages, but no actual damages. On appeal, the eighth circuit directed an entry of nominal damages. The *Wright* court cited *Herberholt v. dePaul Community Health Center,* 625 S.W.2d 617 (Mo.banc 1981), in support of its holding that under appropriate circumstances, judges can independently direct the entry of nominal damages judgments. *Wright,* 672 F.Supp. at 426.

*Herberholt* involved the appellant's former employer's violation of the service letter statute. The jury returned an award of actual damages in the amount of $15,000, which the Missouri Supreme Court found was not supported by the evidence. *Id.* at 623. However, the Court found that the appellant employee offered sufficient evidence to sustain a finding that his former employer did not provide him with a letter stating the true reason for his discharge, thus entitling the former employee to an award of nominal damages for violation of the service letter statute. The Court found that "The failure to give a proper service letter constituted an invasion of plaintiff's legal rights and without proof of any damages whatever entitled plaintiff to a verdict for nominal damages. The law presumes actual damage to plaintiff from the failure of defendant to issue a proper service letter as required by the statute." *Id.* at 622, quoting *Heuer v. John R. Thompson Co.,* 251 S.W.2d 980, 985 (Mo.App.1952). The Court went on to state:

> Inasmuch as the evidence adduced by appellant to support his theory of "actual" damages is susceptible of multiple interpretations, it appears that he has failed to prove that any prospective employer did not hire him because of the contents of the service letter. Thus, under the existing law, appellant failed to make a submissible case for actual damages. However, as heretofore noted, failure of proof thereon does not deprive him of a judgment for nominal damages if he was not provided with a letter stating the true reason for his discharge.

*Herberholt,* 625 S.W.2d at 623–624.

The facts of *Herberholt* are clearly not on point to the facts set out in *Wright,* nor to those in the instant case. More importantly, the jury in *Herberholt* had actually awarded actual damages to the appellant, unlike in the instant case, and unlike in *Wright.* We find that vacating an award of actual damages because they are unsupported by the evidence and directing an award of nominal damages instead because a statute was actually violated by an employer, is a very different action from di-

recting an award of nominal damages when no actual damages were found at all by a jury. Accordingly, we find that the *Wright* court's reliance on *Herberholt* for its holding is misplaced, and we decline to follow it.

Thus, we conclude that the trial court should have entered judgment notwithstanding the verdict on the punitive damages award against Appellants, because it was inconsistent with an award of no actual damages. Because this conclusion is dispositive of the issue of punitive damages, we need not address the issue of whether there was sufficient evidence of Bonser's evil motive or reckless indifference to the rights of others to support an award of punitive damages. Point I is granted.

In their second point on appeal, Appellants charge that the trial court erred in submitting the punitive damages instruction and in denying Appellants' motion for directed verdict, judgment notwithstanding the verdict, and/or in the alternative new trial, because Jacobs failed to establish the essential elements of false imprisonment where his arrest was legally justified.

■■■ Under this point, Appellants argue that Jacobs did not make a submissible case of false arrest. If Jacobs did not make a submissible case, a directed verdict or judgment notwithstanding the verdict would have been proper. *See Mogley v. Fleming,* 11 S.W.3d 740, 747 (Mo.App. E.D.1999). In order to make a submissible case, Jacobs must present substantial evidence for every fact essential to liability. *Id.* A false arrest or false imprisonment occurs when there is confinement without legal justification by the wrongdoer of the person wronged. *Bramon v. U-Haul,* 945 S.W.2d 676, 680 (Mo.App. E.D.1997). The constituent elements of false imprisonment are the restraint of Jacobs against his will, and the unlawful-

ness of the restraint. *Id.* Appellants are liable if it is shown that they instigated, caused or procured the arrest. *Id.* Showing that Appellants merely gave information to the police is insufficient, even if that information is wrong. *Id.* However, if Jacobs alleges that Appellants knowingly provided false, incomplete or misleading information, and an illegal arrest results, it may be reasonably inferred that they instigated the illegal arrest. *Id.*

Appellants argue that Jacobs could not show that Appellants' statements to the arresting authority were the sole cause of his arrest because at the time of his arrest there was an outstanding warrant for his arrest which had previously been issued by a Municipal Judge in St. Louis County. Appellants maintain that Jacobs had the burden to prove that the arrest was unlawful, and an arrest made pursuant to a warrant is a valid, legal arrest, citing *Nelson v. R.H. Macy and Co.,* 434 S.W.2d 767, 773 (Mo.App. W.D.1968). Appellants state that Jacobs presented no evidence that he was not arrested pursuant to the outstanding warrant for his arrest.

This argument is without merit. Police officers at the airport told Jacobs that he was under arrest and then handcuffed him because Appellants had accused him of assault on Bonser. Appellants are liable if it is shown that they instigated, caused or procured the arrest. *Bramon,* 945 S.W.2d at 680. Here it is clear that they did. Not until after Jacobs was placed in a jail cell was it discovered that there was an outstanding warrant for Jacobs's arrest. Appellants present no authority for their contention that Jacobs must prove to the jury that the outstanding warrant for his arrest was not the cause of this particular arrest. In any event, it is clear that it was not, and that Appellants' actions caused Jacobs's arrest.

■■■ Appellants also maintain in this point that the trial court erred in submit-

ting the punitive damages instruction on Jacobs's claim of false arrest, because Jacobs failed to provide evidence of Appellants' evil motive and outrageous conduct. In support of this contention, Appellants state that Jacobs presented no evidence that Appellants gave false information to the police. We disagree. Jacobs presented evidence that he did not assault Bonser, but rather his hand struck her lightly in reflex to her putting hot cigarette ashes on his hand. For Appellants to tell police that Jacobs assaulted Bonser after such a sequence of events, coupled with the foul language, threats and obnoxious and illegal behavior allegedly perpetrated by Appellants, most certainly could demonstrate an evil motive and outrageous conduct to a jury. Accordingly, we find that the trial court did not err in submitting a punitive damages instruction to the jury on Jacobs's false arrest claim.[3] Point two is denied.

In their third point, Appellants claim the trial court erred in submitting the punitive damages instruction and in denying Appellants' motions for directed verdict, for judgment notwithstanding the verdict and/or for new trial on Jacobs's claim of malicious prosecution because Jacobs failed to present sufficient evidence to substantiate each element of the claim. Appellants also state within the body of their argument that notwithstanding the fact that the punitive damages instruction should not have been given, the instruction itself was erroneous.

The jury declined to return a punitive damages award against either Appellant on Jacobs's malicious prosecution claim, so Appellants are not aggrieved by, and we decline to address, their claim of error, including the erroneous instruction argument.

■ If Jacobs did not make a submissible case on his claim of malicious prosecution, a directed verdict or judgment notwithstanding the verdict would have been proper. *Mogley,* 11 S.W.3d at 747. In order to make a submissible case of malicious prosecution, Jacobs must show: 1) commencement of an earlier suit or prosecution against Jacobs; 2) the instigation by Appellants; 3) termination of the proceeding in Jacobs's favor; 4) lack of probable cause for the prosecution; 5) malice by Appellants in instituting the prosecution; and 6) damage to Jacobs. *Misischia v. St. John's Mercy Med. Center,* 30 S.W.3d 848, 861 (Mo.App. E.D.2000). Appellants maintain that Jacobs did not establish the second, fourth and fifth elements.

■ Regarding the second element, Appellants cite *Baker v. St. Joe Minerals Corp.,* for the rule that instigation requires that there be affirmative action by way of advice, encouragement, pressure or something similar in the institution, or causing the institution of the proceeding. 744 S.W.2d 887, 889 (Mo.App. E.D.1988). Appellants maintain that in the instant case the prosecution was instituted by the sworn information of the Prosecuting Attorney, who performed an independent investigation. Appellants claim there was no evidence adduced that Appellants instigated the prosecution. On the contrary, we find that there is no evidence in the record that the Prosecuting Attorney's information was based on anything other than Bonser's complaint. Appellants' claim of an independent investigation is not supported by any evidence in the record. We find there is sufficient evidence in the record that Appellants instigated the prosecution.

■ Appellants also claim that Jacobs did not establish lack of probable

---

**3.** Appellants' claim that the trial court's misnumbering of the punitive damages instruc-

tions prejudiced the jury is completely without merit and does not even merit discussion.

cause. The fact that the prosecution began on the sworn information from the Prosecuting Attorney creates a prima facie showing of probable cause. *Desai v. SSM Health Care,* 865 S.W.2d 833, 837 (Mo.App. E.D.1993). The prima facie showing is conclusive unless rebutted by evidence that false testimony was the basis of the charge and the falsity was discoverable upon reasonable investigation. *Id.* The providing of honest information from which a prosecution ensues does not constitute instigation, although liability may arise from supplying false information to the prosecuting official. *Baker,* 744 S.W.2d at 889. Appellants claim that Jacobs did not allege that the information given by Appellants was false, but that he relies solely on his acquittal to establish lack of probable cause. Where a prima facie showing of probable cause exists, the fact that a plaintiff was acquitted creates no genuine issue of fact on that issue. *Perry v. Dayton Hudson Corp.,* 789 S.W.2d 837, 841 (Mo.App. E.D.1990).

A review of Jacobs's amended petition reveals that Jacobs did, indeed, allege lack of probable cause. At trial, Jacobs presented evidence that there was no probable cause for the prosecution because the prosecution was based on false testimony. The evidence of false testimony was that Bonser claimed Jacobs assaulted her when she knew that his touching of her body occurred as a result of a reflexive movement by Jacobs resulting from her depositing hot cigarette ashes on his hand. We find that Jacobs rebutted the prima facie showing of probable cause with this evidence of false testimony. *Desai,* 865 S.W.2d at 837.

 Appellants' last contention under this point is that Jacobs failed to establish that Appellants' conduct was actuated by malice. Appellants maintain that Jacobs offered no evidence, but only speculated as to Appellants' motives. We find there was adequate evidence in the record, in the form of Appellants' obnoxious and then vindictive words and conduct during the incident in question, that Appellants' instigation of the prosecution was actuated by malice. Point three is denied.

 In their fourth and final point on appeal, Appellants assert that the trial court erred in overruling objections to the admissibility of evidence regarding Bonser's previous testimony in the criminal trial against Jacobs, because Jacobs failed to disclose the transcript of the criminal trial in violation of discovery rules, and such evidence was irrelevant and confused the jury on the issues resulting in unfair prejudice.

Appellants claim that Jacobs was asked and ordered by the court to answer if he had a transcript of the January 16, 1997 criminal trial against Jacobs. Jacobs answered that he did not. Subsequently during the trial Jacobs produced portions of the criminal trial transcript when questioning Bonser in regard to her testimony therein. Jacobs attempted to impeach Bonser with her previous testimony. Bonser objected based on failure to disclose. The trial court overruled Bonser's objections.

The admission of evidence is within the sound discretion of the trial court. *Fairbanks v. Weitzman,* 13 S.W.3d 313, 318 (Mo.App. E.D.2000). We do not disturb the trial court's decision regarding the admission of evidence absent a clear abuse of discretion. *Id.* Such abuse occurs only when the ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful, deliberate consideration. *Doe v. Alpha Therapeutic Corp.,* 3 S.W.3d 404, 421 (Mo.App. E.D. 1999). In the instant case, the trial court's ruling on the admissibility of portions of Bonser's testimony contained in the crimi-

nal trial transcript was not against the logic of the circumstances, in that Bonser was present in the courtroom and available for examination and cross-examination about what she testified to in the criminal trial. Accordingly, we find the trial court did not abuse its discretion in overruling Bonser's objection. Point four is denied.

For the foregoing reasons, the judgment of the trial court is reversed and remanded in part, with directions to enter judgment notwithstanding the verdict in favor of Bonser with respect to the award of punitive damages on Jacobs's claim of battery against Bonser. In all other respects the judgment is affirmed.

LAWRENCE E. MOONEY, P.J., and PAUL J. SIMON, J., concur.