530 F.Supp.2d 1059 (2007)
David WILSON, Plaintiff,
v.
CITY OF HAZELWOOD, MISSOURI, Todd Greeves, Defendants.
Case No. 4:06CV1292MLM.
United States District Court, E.D. Missouri, Eastern Division.
October 22, 2007.
*1060 *1061 Stephen M. Ryals, Ryals & Breed, P.C., W. Bevis Schock, Schock Law, St. Louis, MO, for Plaintiff.
Peter J. Dunne, Peter M. Rohrich III, Rabbitt, Pitzer & Snodgrass, P.C., St. Louis, MO, for Defendants.

MEMORANDUM OPINION
MARY ANN L. MEDLER, United States Magistrate Judge.
Before the court is the Motion for Summary Judgment filed by Defendants the City of Hazelwood (the "City") and Officer Todd Greeves ("Officer Greeves"). Doc. 11. Plaintiff David Wilson ("Captain Wilson") has filed a Response. Doc. 25. Defendant has filed a Reply. Doc. 29. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 6.

UNDISPUTED FACTS[1]
At all times relevant to the matter under consideration, Officer Greeves was employed by the City as a Public Safety Officer and Captain Wilson was employed by the Robertson Fire Protection District. On May 12, 2003, Officer Greeves responded to a two-vehicle accident at Interstate 270 and McDonnell Boulevard. When Officer Greeves arrived at the accident location, lane two[2] of the two-lane exit ramp for McDonnell Boulevard was blocked by a Robertson Emergency Medical Service Ambulance, the two vehicles involved in the accident, and the police vehicle of Officer Mars. Also, Officer Kristo's police vehicle was parked in lane one of, Interstate 270, which is a four-lane highway, in order to block this lane of traffic for emergency personnel to attend to the drivers in the vehicles. Officer Greeves parked his vehicle approximately 200 feet behind Officer Kristo's vehicle in lane one of Interstate 270, to create a buffer zone. After Officer Greeves arrived at the scene and prior to Captain Wilson's arrival, traffic in lanes two, three, and four of Interstate 270 was traveling "pretty close" to the speed limit of 60 m.p.h. according to Officer Greeves' testimony. After Officer Greeves was on the scene, Fire Engine 5020, operated by Engineer Roy Zeier ("Engineer Zeier") and occupied by Captain Wilson, arrived and parked in lane two of Interstate 270. Captain. Wilson then exited the fire engine and proceeded to one of the vehicles involved in the accident. Officer Greeves approached the passenger side of the fire engine and instructed Engineer Zeier to move the fire engine to lane one of Interstate 270. Officer Greeves believed that the additional blockage of lane two of Interstate 270 would impeded the flow of traffic creating an additional and unnecessary risk to approaching motorists. Captain Wilson instructed Engineer Zeier to ignore Officer Greeves' order and to not move the fire engine to lane one. In his deposition, Officer Greeves testified that he told Captain Wilson and Engineer Zeier that "somebody is going to jail if you don't move the truck." Pl. Ex. 4, Greeves Dep. at 76. Engineer Zeier disregarded Officer *1062 Graves request to move the fire engine. Officer Greeves then arrested Captain Wilson. The arrest report filed by Officer Greeves states that he arrested Captain Wilson for failing to obey the direction of a police official and "parking-illegal parking/stopping" pursuant to the City's municipal code. Def. Ex. D. Officer Greeves' understanding at the time he arrested Officer Wilson was that City ordinances must comply with State law.
In his deposition, Captain Wilson described his arrest as follows: Officer Greeves grabbed Captain Wilson's right arm; Captain Wilson had "no idea" who grabbed his arm and he "jerked away out of reflex"; at the time his arm was grabbed, Captain Wilson's back was to Officer Greeves; Captain Wilson used a jerking motion with his right arm at, which time he was "probably telling [Officer Greeves] that [he] was in the middle of an auto extrication, that we probably should do this at another time or something of that nature"; somewhere in this time frame Officer Greeves told Captain Wilson he was under arrest and handcuffed him; Officer Greeves then either pulled on the handcuffs or on Captain Wilson's arm; Officer Greeves' pulling on Captain Wilson's arm put stress on the handcuffs; and Officer Greeves pulled the chain of the handcuffs.
After handcuffing Captain Wilson Officer Greeves placed him in the back seat, passenger side, of his police vehicle, which was running with the air conditioning going. Officer Greeves testified in his deposition that there was a plexiglass divider between the front and back of the police vehicle; that there were no vents for the air conditioning in the back; and that he rolled up the window. Greeves Dep. at 92. Captain Wilson testified that it was "extremely hot" in the police vehicle. Wilson Dep. at 58.
Officer Greeves asked other firemen on the scene for their names and these fireman refused to give their names. Defendant alleges, and plaintiff denies, that Officer Greeves then requested that a supervisor respond to the scene given the lack of cooperation he was receiving from the Robertson Fire Protection District. A supervisor from the Hazelwood Police Department, Lieutenant Brian McKenna, arrived on the scene. Lieutenant McKenna testified in his deposition that after his arrival he made the decision that Captain Wilson should be released. McKenna Dep. at 16. Captain Wilson was released after being in the police car for twenty-three minutes and forty-two seconds. Captain Wilson testified in his deposition that as a result of his being placed in the police vehicle he suffered injury to both wrists and that as a result of his being confined to the police vehicle he was "hot and sore." Wilson Dep. at 59.[3]
In Count I of his Complaint, Captain Wilson alleges that Officer Greeves arrested and seized Captain Wilson without probable cause and therefore violated Captain. Wilson's constitutional rights.[4] Captain Wilson brings Count I pursuant to 42 U.S.C. § 1983. In Count II Captain Wilson seeks attorney's fees and costs pursuant to 42 U.S.C. § 1988. In Count III Captain Wilson alleges that the City is liable pursuant to respondeat superior under § 1983. In Count IV Captain Wilson *1063 alleges battery against Officer Greeves based on State law. In Count V Captain Wilson alleges false arrest and imprisonment against Officer Greeves based on State law. In Count VI Captain Wilson alleges respondeat superior liability against the City based on State law.[5]

STANDARD FOR SUMMARY JUDGMENT
The court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. See also Fenney v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 711 (8th Cir.2003) (holding that an issue is genuine "if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving part").
A moving party always bears the burden of informing the court of the basis of its motion. Celotex, 477 U.S. at 323, 106 S.Ct. 2548. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R.Civ.P. 56(e); Anderson, 477 U.S. at 247, 106 S.Ct. 2505. The nonmoving party may not rest upon mere allegations or denials of his pleading. Id. at 256, 106 S.Ct. 2505.
In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in its favor. Id. at 255, 106 S.Ct. 2505; Raschick v. Prudent Supply, Inc., 830 F.2d 1497, 1499 (8th Cir.1987). The court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249, 106 S.Ct. 2505. However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Id. at 252, 106 S.Ct. 2505. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Id. at 248, 106 S.Ct. 2505. With these principles in mind, the court turns to an analysis of Defendants' motion.

LEGAL FRAMEWORK and DISCUSSION
A. Count I  Violation of 42 U.S.C. § 1983 by Officer Greeves:
In Count I Captain Wilson alleges that by arresting him and placing him in the back seat of his police vehicle Officer Greeves violated his constitutional rights. As stated above, Captain Wilson brings Count I pursuant to 42 U.S.C. § 1983. In the Motion for Summary Judgment Defendants allege that Captain Wilson's seizure, arrest, and being placed in the police vehicle were lawful; that Captain Wilson's constitutional rights were not violated; and that Officer Greeves is entitled to qualified immunity.
*1064 42 U.S.C. § 1983 "subjects to liability `[e]very person' who, acting under color of state law, commits" a constitutional violation. Buckley v. Fitzsimmons, 509 U.S. 259, 268, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). The Supreme Court has recognized there are two types of immunities which may apply to public officials sued pursuant to § 1983, absolute immunity and qualified immunity. Id. at 268-69, 113 S.Ct. 2606. Absolute immunity applies where an official is performing a special function which "would have been immune when Congress enacted § 1983" and is applied "quite sparing[ly]." Id. at 269, 113 S.Ct. 2606. Qualified immunity "`protect[s] officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.'" Id. at 268, 113 S.Ct. 2606 (quoting Butz v. Economou, 438 U.S. 478, 506, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)). Officer Greeves was performing a discretionary function when he seized and arrested Captain Wilson. See St. John v. United States, 240 F.3d 671, 678 (8th Cir.2001) (holding that the decision to arrest is a discretionary police function). Thus, the court will consider if Officer Greeves is entitled to qualified immunity as he is not entitled to official immunity.
Qualified immunity protects a government official from suit when his or her conduct does not "`violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Sexton v. Martin, 210 F.3d 905, 909 (8th Cir.2000) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). See also Brockinton v. City of Sherwood, 503 F.3d 667, 671-72 (8th Cir.2007).
The two essential elements of a cause of action pursuant to § 1983 are: "(1) whether the conduct of which the plaintiff complains `was committed by a person acting under color of state law[6]; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." DuBose v. Kelly, 187 F.3d 999, 1002 (8th Cir.1999) (citations omitted) (internal quotations omitted). The Supreme Court has held that the "threshold question" in a qualified immunity inquiry is whether "Waken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). In Saucier, the Court continued to state that:
If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties submissions, the next sequential step is to ask whether the right was clearly established. This inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition.
Id. See also Andrews v. Fuoss, 417 F.3d 813, 816 (8th Cir.2005); Littrell v. Franklin, 388 F.3d 578 (8th Cir.2004) ("The `existence or nonexistence of a constitutional right' is, therefore, the threshold question.") (quoting Saucier, 533 U.S. at 201, 121 S.Ct. 2151).
To withstand a motion for summary judgment based on qualified immunity, a plaintiff alleging liability pursuant to § 1983 "`must (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that *1065 his alleged conduct would have violated the plaintiff's clearly established right.'" Brockinton, 503 F.3d at 672 (quoting Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir.1996)). See also Mettler v. Whitledge, 165 F.3d 1197, 1202 (8th Cir.1999); Hunter v. Namanny, 219 F.3d 825, 829 (8th Cir.2000); Goff v. Bise, 173 F.3d 1068, 1072 (8th Cir.1999).
A constitutional right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "Thus, . . . in light of the Anderson definition of clearly established, the question whether the . . . right was clearly established at the time the defendant acted . . . requires an assessment of whether the official's conduct would have been objectively reasonable at the time of the incident. Littrell, 388 F.3d at 583 (internal quotations and citations omitted).
First, the court must examine the constitutional rights which Captain Wilson alleges that Officer Greeves violated. The Fourth and Fourteenth Amendment prohibit an individual's being arrested without probable cause. Kuehl v. Burtis, 173 F.3d 646, 649 (8th Cir.1999) (citing Habiger. v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996)). Probable cause exists to arrest an individual if "at the moment the arrest was made . . . the facts and circumstances within [the arresting officer's] knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that the individual being arrested had violated the law. Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).
The Fourth and Fourteenth Amendment prohibit unreasonable searches and seizures. In Brower v. County of Inyo, 489 U.S. 593, 597, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989), the Supreme Court held that a seizure occurs when there is "a governmental termination of freedom of movement through means intentionally applied." "Violation of the Fourth Amendment requires an intentional acquisition of physical control." Id. at 596; 109 S.Ct. 1378. For a seizure to create liability under § 1983, however, it must be unreasonable and without probable cause. Id. at 599, 109 S.Ct. 1378; United States v. Olivera-Mendez, 484 F.3d 505 (8th Cir. 2007). A determination of whether a seizure is reasonable requires consideration of the facts of an individual case. Thomas v. Dickel, 213 F.3d 1023, 1024, 1026 (8th Cir.2000).
Mo.Rev.Stat. § 300.020 provides that "the traffic division with such aid as may be rendered by other members of the police department shall enforce the street traffic regulations of the city and all of the state vehicle laws applicable to the street traffic in the city. . . ." Further, Mo.Rev. Stat. § 300.075.1 provides that it is the duty of police officers to enforce all traffic laws. Mo.Rev.Stat. § 300.075 provides that officers of a fire department, "when at the scene of an accident, may direct or assist the police in directing traffic thereat or in the immediate vicinity." Mo.Rev.Stat. § 304.022.4.1 defines "emergency vehicle" as including vehicles operated by a fire department. Mo.Rev.Stat. § 304.022.5.2 provides that "[t]he driver of an emergency vehicle may: (a) Park or stand irrespective of the provisions of sections 304.014 to 304.025." (emphasis added). Mo.Rev.Stat. § 304.014 to § 304.025 are basic traffic laws. For example, Mo.Rev. Stat. § 304.014 provides that "[e]very person operating or driving a vehicle upon the highways of this state shall observe and comply with the following rules of the road."
*1066 At the time Officer Greeves engaged in the conduct which is the subject of the matter under consideration, Captain Wilson and his crew were operating an emergency vehicle according to Missouri statute. See Mo.Rev.Stat. § 304.022.4.1. Moreover, they were engaged in a rescue operation and not, as Defendants suggest, directing and/or controlling traffic. To the extent that any ordinances of the City were in conflict with relevant State statutes, the parties agree that the State statutes are controlling. As such, Captain Wilson and his crew were entitled to park their fire engine irrespective of the traffic laws and/or City ordinances. See Mo.Rev. Stat. § 304.022.5.2. Despite this authority to park the fire engine where Captain Wilson thought it best under the circumstances, Officer Greeves' arrested Captain Wilson and placed him in the back seat of the police vehicle based on Captain Wilson's refusing to move the fire engine. Under such circumstances the court finds, as a matter of law, that the undisputed facts establish that probable cause did not exist to arrest Captain Wilson for refusing to move the fire engine and/or to direct his crew to do so. See McGuire v. Witcher, 689 S.W.2d 719, 721 (Mo.Ct.App.1985) (holding that probable cause is a question of law for the court to decide; it is not a matter for the jury). Further, the undisputed facts, including that Captain Wilson was handcuffed and placed in the back of the police vehicle against his will, establish that there was a seizure within the meaning of the Fourth Amendment. Additionally, the undisputed facts, including that Officer Greeves arrested Captain Wilson based on a City ordinance, that at the time of his arrest Captain Wilson, a firefighter, was engaged in a rescue operation involving an extraction of an accident victim, that Officer Greeves knew that State statutes prevailed over City ordinances, and that State statutes provide authority for a firefighter to park irrespective of other statutory provisions, establish that Officer Greeves' seizure of Captain Wilson was not based on probable cause. See Brower, 489 U.S. at 597, 109 S.Ct. 1378. As such, the court finds as a matter of law that the undisputed facts establish that Captain Wilson's constitutional rights were violated and that the constitutional rights which Officer Greeves violated were clearly established. Thus, Captain Wilson has established the first two elements, as set forth above, necessary to withstand summary judgment based on qualified immunity. See Brockinton, 503 F.3d at 671-72.
Officer Greeves is nonetheless entitled to qualified immunity if "a reasonable officer in [his] position would [not] have known that his actions violated" Captain Wilson's constitutional rights. Kuehl v. Burtis, 173 F.3d 646, 649 (8th Cir.1999) (citing Merritt v. Reed, 120 F.3d 124, 125-26 (8th Cir.1997)). Thus, Officer Greeves "is entitled to qualified immunity if he seized and arrested Captain Wilson under the mistaken belief that he had probable cause to do so-provided that this mistake was objectively reasonable. Id. at 649-50 (citing Hunter v. Bryant, 502 U.S. 224, 228-29, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)). The court further finds that under the circumstances of this case, including the presence of firefighters, who were engaged in a rescue operation, and police and traffic officers, who were engaged in directing and controlling traffic, reasonable minds could differ as to whether or not Officer Greeves' conduct was objectively reasonable or that Officer Greeves should have known that his conduct violated clearly established constitutional rights. See Goff v. Bise, 173 F.3d 1068 (8th Cir. 1999); Giordano v. Lee, 434 F.2d 1227, 1231-32 (8th Cir.1970). As such, the court finds that there is a genuine issue of material fact regarding Count 1 of Defendants' *1067 Motion for Summary Judgment and that, therefore, the motion should be denied in regard to Count I.
B. Count II  Attorney's Fees and Costs Pursuant to 42 U.S.C. § 1988:
In Count H Plaintiff seeks attorney's fees and costs pursuant to § 1988. Section 1988 provides that a defendant may be liable for attorney's fees and costs where a plaintiff prevails on a cause of action brought pursuant to § 1983. As the court has found above that there are genuine issues of material fact in regard to Captain Wilson's claim made pursuant to § 1983, the court further finds that to the extent Defendant seeks summary judgment in regard to Count II, the Motion for Summary Judgment should be denied without prejudice at this time.
C. Count III  A Violation of 42 U.S.C. § 1983 by the City:
In Count III, Captain Wilson bases his claim that the City is liable pursuant to § 1983 on a theory of respondeat superior. Upon so doing Captain Wilson relies on the dissent in Board of the County Commissioners of Bryan County v. Brown, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). In Bryan County, however, the majority of the Supreme Court held that a municipality may not be held liable under § 1983 pursuant to a theory of respondeat superior. To establish liability a plaintiff must identify a municipal policy or custom which caused his injury. Id. at 403, 117 S.Ct. 1382 (citing Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 689, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Captain Wilson does not allege such a policy or custom. As such, the court finds that summary judgment should be granted in favor of the City in regard to Count III.[7]
D. Counts IV and V  State Law Claims of Battery, False Arrest and Wrongful Imprisonment:
In Count IV, Captain Wilson alleges that Officer Greeves touched Plaintiffs person; that this touching was unlawful and unjustified; and that, therefore, Officer Greeves is liable for battery pursuant to State law. In Count V, Captain Wilson alleges that Officer Greeves' seizure of Captain Wilson constituted false arrest and false imprisonment under State law. Defendants assert that Officer Greeves is entitled to official immunity in the context of Counts IV and V and that, therefore, summary judgment should be granted in his favor in regard to these counts.
Under Missouri law battery includes "the unlawful touching or striking of the person of another by the aggressor himself' done with the intention of bringing about harm where the contact is not otherwise privileged and where the contact is not consented by the other person. Martin v. Yeoham, 419 S.W.2d 937, 946 (Mo. Ct.App.1967).
In Kurtz v. City of Shrewsbury, 245 F.3d 753 (8th Cir.2001), the court set forth the elements of a claim for false arrest under Missouri law and held as follows:
A false arrest occurs when there is a confinement without legal justification. Desai, v. SSM Health Care, 865 S.W.2d 833, 836 (Mo.Ct.App.1993); Day v. Wells Fargo Guard Service Co., 711 S.W.2d 503, 504 (Mo.1986) (holding that plaintiff must prove that there was confinement without legal justification). The unlawfulness of the restraint is a key element *1068 in a cause of action for false arrest. Desai, 865 S.W.2d at 836. A police officer who has probable cause to believe that a suspect has committed a crime is not liable for the state law tort of false arrest simply because the suspect is later proven innocent or the charges are dismissed. Hannah v. City of Overland, 795 F.2d 1385, 1389 (8th Cir.1986) (citing Pierson v. Ray, 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)). See also United States v. Wallraff 705 F.2d 980, 990 (8th Cir.1983) (holding that probable cause to arrest exists where totality of facts would justify a prudent person in believing the individual arrested had committed an offense). An officer is empowered to make an arrest if he or she has reasonable grounds to believe that the person is guilty of the offense. Rustici v. Weidemeyer, 673 S.W.2d 762, 769 (Mo.1984).
Wrongful imprisonment, like false arrest, involves "`confinement without legal justification, by the alleged wrongdoer of the person wronged.'" Highfill v. Hale, 186 S.W.3d 277, 280 (Mo.2006) (quoting Warrem v. Parrish, 436 S.W.2d 670, 672 (Mo.1969)).
In regard to official immunity, the Missouri Supreme Court stated in Charron v. Thompson, 939 S.W.2d 885, 886 (Mo.1996), that:
The doctrine of official immunity shields officials from liability for injuries arising out of their discretionary acts or omissions. An official may be held liable for injuries arising out of ministerial acts.[8]
. . .
Whether a function is discretionary or ministerial is a case by case determination to be made after weighing "such factors as the nature of the official's duties, the extent to which the acts involve policymaking or the exercise of professional expertise and judgment."[9]
A ministerial function is one which a public officer is required to perform "upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to [an employee's] own judgment or opinion concerning the propriety of the act to be performed."[10]
The court in Charron, 939 S.W.2d at 887, further explained that decisions are not ministerial in nature if they "`necessarily involve the exercise of a substantial degree of judgment." (quoting Kanagawa v. State By and Through Freeman, 685 S.W.2d 831, 836 (Mo.1985) (en banc)). Official immunity, however, does not apply to discretionary acts "done in bad faith or with malice." State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443, 446 (Mo.1986) (citations omitted).
The conduct of which Captain Wilson complains involves Officer Greeves' deciding to and actually seizing and arresting Captain Wilson. This conduct involves a discretionary act. See Kurtz, 245 F.3d at 757. As such, official immunity applies unless Officer Greeves' arresting Captain Mitchell and placing him in the police vehicle was done in bad faith or with malice. See Twiehaus, 706 S.W.2d at 446. The court has found above, as a matter of law, that Officer Greeves did not have probable cause to seize and/or arrest Captain Wilson. There is, however, a genuine issue of material fact as to whether Officer *1069 Greeves acted in bad faith or with malice. The court finds, therefore, that Defendants' Motion for Summary Judgment should be denied in regard to Counts IV and V.
E. Count VI  False Imprisonment and Battery Against the City:
Captain Wilson concedes that Defendants' Motion for Summary Judgment should be granted in regard to Count VI as sovereign immunity is applicable to that count.[11] As such, the court finds that summary judgment should be granted in favor of the City in regard to Count VI.

CONCLUSION
The court finds that Defendants' Motion for Summary Judgment should be denied in regard to Counts I, and V, denied without prejudice in regard to Count II, and granted in regard to Counts III and VI.
Accordingly,
IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment is GRANTED, in part, and DENIED, in part; Doc. 11
IT IS FURTHER ORDERED that Summary Judgment is GRANTED in favor of Defendants in regard to Counts III and VI of Plaintiffs Complaint;
IT IS FURTHER ORDERED that Defendants' Summary Judgment is DENIED, in regard to Counts I, IV, and V and DENIED, without prejudice, in regard to Count II of Plaintiffs Complaint;
IT IS FURTHER ORDERED that at the conclusion of this matter judgment will issue in favor of Defendants in regard to Counts III and VI of Plaintiff's Complaint.
NOTES
[1] The facts are undisputed unless otherwise stated,
[2] For purposes of this lawsuit, the parties have described the two exit lanes as "lane, one" and "lane two" and the four through northeast bound lanes of Interstate 270 as "lanes one through four," counting right to left.
[3] In his Response to the Motion for Summary Judgment Plaintiff included numerous alleged additional undisputed facts which are not material to resolution of the Motion for Summary Judgment. Many of these facts relate to Officer Greeves' work history.
[4] Captain Wilson sues Officer Greeves in his individual capacity.
[5] In the Complaint Plaintiff misnumbered Count VI.
[6] There is no question that Officer Greeves was acting under color of State law.
[7] To the extent that by alleging respondeat superior liability in Count III Plaintiff seeks to preserve that issue, the court acknowledges that Plaintiff has preserved that issue for purposes of appeal.
[8] Kanagawa v. State By and Through Freeman, 685 S.W.2d 831, 835 (Mo.1985) (en banc).
[9] Id. at 836.
[10] Rustici v. Weidemeyer, 673 S.W.2d 762, 769 (Mo.1984) (en banc) (quoting Jackson v. Wilson, 581 S.W.2d 39, 43 (Mo.Ct.App.1979)).
[11] Plaintiff concedes that the City of Hazelwood's insurance policy establishes that it has not waived sovereign immunity for purposes of liability under State law. See Epps v. City of Pine Lawn, 353 F.3d 588, 593 (8th Cir. 2003) (holding that to the extent a city purchases liability insurance it is deemed to have waived sovereign immunity) (citing Mo.Rev. Stat. § 537.610.1).