**Robert J. MOGLEY, Respondent,**

v.

**Lawrence J. FLEMING, Appellant.**

**No. ED 74828.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 7, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 16, 2000.

Application for Transfer Denied March 21, 2000.

In 1956, plaintiff, an attorney, began working for Chicago Title Insurance Company (Chicago Title). Sometime in the 1970's, plaintiff took over Chicago Title's St. Louis "operation." In 1981, Chicago Title informed plaintiff, then age fifty-four, that due to the company's sale of the St. Louis office it was eliminating plaintiff's "position." A letter from Chicago Title dated July 27, 1981, informed plaintiff that the company had been unable to "locate a new position" for him within the company. The letter set forth the company's offer of early retirement that included continuation of his salary until January 31, 1982, at which time plaintiff would be fifty-five years old and eligible for certain pension benefits. These benefits included among other things a lump sum payment of $92,-743.95 or lifetime monthly benefits of $579.35. Under the early retirement offer, plaintiff was eligible to participate in Chicago Title's medical plan at no cost. The letter also provided that if plaintiff accepted the offer "an appropriate agreement and release setting forth the terms of your separation and releasing Chicago Title from any further claims will be forwarded to you for signature." According to the letter, if plaintiff did not accept the early retirement offer, his employment would be terminated effective July 31, 1981, and he would be eligible at age fifty-five for pension benefits of a lump sum payment of $54,929.85 or $343.14 per month. In addition, if plaintiff refused the offer his medical insurance could only be converted to provide coverage "as set forth in the applicable policy." Plaintiff testified that if he refused the offer he would have "no medical insurance."

Plaintiff consulted with defendant, an attorney, regarding Chicago Title's offer and a potential age discrimination case.[1] The two discussed plaintiff's medical condition and the federal requirement of filing a charge of employment discrimination within 180 days of the alleged unlawful practice. Defendant believed that given plain-

James M. Martin, St. Louis, MO, for appellant.

Alan G. Kimbrell, St. Louis, MO, for respondent.

WILLIAM H. CRANDALL, Jr., Presiding Judge.

Defendant, Lawrence J. Fleming, appeals from the judgment entered after a jury returned a verdict for plaintiff, Robert J. Mogley, on his claims for legal malpractice and fraud. We affirm in part and reverse in part.

1. A portion of the facts recited are derived from plaintiff's trial testimony.

tiff's medical condition and corresponding need for medical insurance, the best course was to delay signing the release as long as possible. According to plaintiff "he held out" until August 19, 1981, when he accepted Chicago Title's early retirement offer and executed an agreement and release. The release provides that plaintiff "releases and discharges" Chicago Title from any claims arising out of Chicago Title's action in relieving plaintiff of his duties as of July 31, 1981 and terminating his employment on January 31, 1982, including but not limited to claims of age discrimination, any other claims for relief under any statute, or claims based on alleged wrongful discharge under the common law. Plaintiff worked for the new owner of Chicago's Title's St. Louis office until January 27, 1982. Approximately February 1, 1982, plaintiff received the money and benefits provided in Chicago Title's early retirement offer. On February 16, 1982, plaintiff filed, with defendant's assistance, an age discrimination complaint with the Equal Employment Opportunity Commission (E.E.O.C.). The E.E.O.C. issued a right to sue letter and defendant brought an age discrimination action on plaintiff's behalf in U.S. District Court. The district court dismissed plaintiff's complaint with prejudice. *Mogley v. Chicago Title Insurance Co.*, 553 F.Supp. 1045, 1046–47 (E.D.Mo.1983). The Eighth Circuit affirmed the district court's dismissal. *Mogley v. Chicago Title Insurance Co.*, 719 F.2d 289, 291 (8 th Cir.1983).

In 1985, plaintiff discussed with a co-worker, who was an attorney, the circumstances regarding his leaving Chicago Title. The co-worker told plaintiff he had brought wrongful termination actions in Florida state courts. Plaintiff, defendant, and the co-worker met, and the co-worker "explained his theories on wrongful termination" to defendant. Defendant thought the co-worker's ideas had "some merit." Defendant prepared a petition for "WRONGFUL TERMINATION OF EMPLOYMENT," naming Chicago Title as defendant. Defendant told plaintiff he

filed the petition in Edwardsville, Illinois at the Madison County Court. In the spring 1986, defendant gave plaintiff the wrongful termination petition with a cause and division number. Plaintiff paid defendant approximately $1,090. Defendant told plaintiff that his case against Chicago Title had a settlement value of $285,000. When plaintiff and his wife went to purportedly scheduled depositions of Chicago Title employees, defendant informed them Chicago Title had cancelled the depositions. Defendant failed to respond to several of plaintiff's letters and phone calls. On July 3, 1989, plaintiff went to the Madison County Court and found that no petition had been filed.

On August 2, 1991, plaintiff brought the present action against defendant. Plaintiff alleged in part: (1) in August 1981, Chicago Title "fraudulently induced and coerced plaintiff" to agree to termination of his employment and sign a release; (2) defendant prepared on plaintiff's behalf a complaint against Chicago Title for wrongful termination; (3) defendant failed to file the complaint or any other pleading on plaintiff's behalf; (4) the applicable statute of limitations in Illinois is five years; (5) defendant was thereby negligent; and (6) plaintiff was damaged by defendant's negligence. On August 26, 1993, the trial court dismissed plaintiff's action without prejudice for failure to prosecute. On February 9, 1994, the court set aside the dismissal. Plaintiff filed an amended petition on August 23, 1994, again alleging legal malpractice and adding a count for fraudulent misrepresentation.

The case proceeded to trial. Plaintiff and his wife testified. Defendant did not testify. An attorney testified for defendant regarding releases, economic coercion, and ratification. The jury returned a verdict for plaintiff on both claims and assessed actual damages of $58,000 on the legal malpractice claim and actual damages of $3,000 and punitive damages of $225,000 on the fraud claim. The trial court en-

tered judgment and denied defendant's post-trial motion for judgment notwithstanding the verdict or in the alternative for new trial or for remittitur. This appeal followed.

■ Defendant argues in his first point that the trial court lacked jurisdiction to set aside the dismissal. On August 26, 1993, the trial court dismissed plaintiff's action without prejudice for failure to prosecute. The court set aside the dismissal on February 9, 1994.

Defendant contends that under Rule 75.01 the court lacked jurisdiction to set aside the dismissal order after thirty days. "An order of dismissal without prejudice falls within the purview of Rule 75.01, which provides that a court loses control over its judgment thirty days after the entry of the judgment." *Quality Business Accessories, Inc. v. National Business Products, Inc.*, 880 S.W.2d 333, 335 (Mo. App. E.D.1994).

Plaintiff contends that the trial court had jurisdiction to set aside the dismissal under Rule 74.03. This rule provides:

> Immediately upon the entry of an order or judgment, the clerk shall serve a notice of the entry by mail in the manner provided for in Rule 43.01 upon each party who is not in default for failure to appear and who was not present in court in person or by attorney at the time of the entry of such order or judgment. If such notice is not given, the order or judgment shall be set aside for good cause shown upon written motion filed within six months from the. entry of the order or judgment. This Rule 74.03 shall not preclude relief under Rule 74.06.

■ Rule 74.03 requires service of a notice of the entry of the order or judgment by mail, in the manner described in Rule 43.01, upon each party who was not present in court in person or by an attorney at the time of the entry of the order or judgment. *Vilsick v. Fibreboard Corp.*, 861 S.W.2d 659, 664 (Mo.App. E.D.1993).

A trial court has jurisdiction to set aside an order or judgment when no notice has been sent to a party. *Id.* Rule 74.03 "clearly and unambiguously sets forth a six-month time limitation for a party to request that a trial court set aside an order entered without notice." *Id.* In the present case, the court dismissed the action on August 26, 1993, and the order setting aside the dismissal was entered within six months on February 9, 1994.

Plaintiff asserts that he made an oral motion to set aside the dismissal. Plaintiff contends that if defendant's counsel had not consented to the order setting aside the dismissal there would have been a hearing with evidence that plaintiff's counsel did not receive notice of the dismissal order. Plaintiff further contends that if the trial court had found there were insufficient grounds to set aside the dismissal, he could have refiled his suit under both the savings statute and the applicable statute of limitations. However, defendant contends that plaintiff's failure to file a written motion as provided in Rule 74.03 deprives the court of jurisdiction to set aside the dismissal under this rule.

The order setting aside the dismissal is on a preprinted form with certain information written in spaces. The order provides, "(Plaintiff's/Defendant's) motion to set aside dismissal for failure to prosecute (~~called, argued, and~~ sustained). Order of dismissal is hereby set aside." The order places the action on a trial docket and lists dates for discovery and other pretrial matters. The order then provides "All the above by consent of all counsel." The trial judge and counsel for both plaintiff and defendant signed the order.

Clearly, a trial court has jurisdiction to set aside a dismissal within six months under Rule 74.03. The prescribed method is on written motion. Here, defendant waived the formality of a written motion and simply consented to the trial court's ruling. Defendant cannot now raise a jurisdictional challenge over a minor procedural omission which he specifically agreed

to waive. Further, because defendant agreed to the trial court's setting aside the dismissal, he cannot argue on appeal that there was not good cause shown. We do not find under the circumstances presented here that the trial court lacked jurisdiction to set aside the dismissal order. To the extent the Southern District has suggested otherwise, we disagree. *See Carr v. Missouri Delta Medical Center*, 890 S.W.2d 324 (Mo.App. S.D.1994); *Cozart v. Mazda Distributors (Gulf), Inc.*, 861 S.W.2d 347 (Mo.App. S.D.1993). Defendant's first point is denied.

Defendant argues in his second point that the trial court erred in denying his motion to dismiss plaintiff's petition because it lacked sufficient allegations of venue or jurisdiction "sufficient to place the matters before the Circuit Court of the City of St. Louis."

■ "Under [section] 476.410, RSMo Supp.1992, if venue is improper where a petition is filed, a circuit judge must transfer the case, upon a motion to dismiss for improper venue, to a circuit court in which venue is proper." *State ex rel. Elson v. Koehr*, 856 S.W.2d 57, 59 (Mo. banc 1993). However, if a party fails to timely raise the issue of improper venue then the issue is deemed waived. *State ex rel. Johnson v. Griffin*, 945 S.W.2d 445, 446–47 (Mo. banc 1997); *State ex rel. DePaul Health Center v. Mummert*, 870 S.W.2d 820, 822 (Mo. banc 1994). "If venue is improper, it inures to the benefit of the parties and the judicial system, for the purpose of efficient administration of justice, to bring the issue to the trial court's attention at the earliest possible time." *State ex rel. Johnson*, 945 S.W.2d at 446–47. Plaintiff filed his petition on August 2, 1991. Defendant argues that he raised a challenge to venue in a motion filed in November 1995. Defendant's counsel entered an appearance and filed pleadings prior to challenging venue and therefore his challenge to venue was not timely. *Id.; State ex rel. DePaul Health Center*, 870 S.W.2d at 822.

■ Defendant also relies on his amended answer filed in April 1998, that challenges venue. To permit defendant to rely on his amended answer filed nearly seven years after the filing of the petition, would negate the requirement that parties must timely raise the issue of improper venue. *See State ex rel. Uptergrove v. Russell*, 871 S.W.2d 27, 29–30 (Mo.App. W.D.1993) (rejecting argument that challenge to venue filed eight days after answer and commencement of discovery related back to date of answer). Defendant waived any objection to venue.[2]

■ As for his "jurisdiction" argument, defendant relies on plaintiff's original petition that fails to state in the prayer for relief that the damages were greater than $15,000 and amended petition that fails to state in the prayer for relief that the damages were greater than $25,000.

■ Defendant contends that section 517.011 [3] provides a monetary jurisdictional limit for associate circuit judges. Section 517.011.1(1) provides that Chapter 517 applies to certain civil actions where the amount demanded does not exceed twenty-five thousand dollars.[4] Chapter 517 provides for certain procedures in civil cases "filed before associate circuit judges." Section 517.011.1 does not set forth the jurisdiction of associate circuit judges but rather provides a monetary limitation for cases where the procedural rules of Chapter 517 will apply. Furthermore, section 478.220 provides that circuit judges and associate circuit judges "may hear and determine all cases and matters within the jurisdiction of the circuit courts." Associ-

2. Defendant was represented by a different attorney at trial then when the original answer was filed.

3. All statutory references are to RSMo.1994 unless otherwise indicated.

4. Prior to 1993, the amount provided in section 517.011.1(1) was fifteen thousand dollars.

ate circuit judges have concurrent original jurisdiction of all causes heard by circuit judges, with no monetary limitations. *Harvey v. Village of Hillsdale*, 893 S.W.2d 395, 397–98 (Mo.App. E.D.1995). Accordingly, we disagree with defendant's suggestion that section 517.011.1 provides for jurisdiction of associate circuit court judges.

Defendant also suggests that plaintiff's failure to include a specific dollar amount of damages in the prayers of the original and amended petitions required an associate circuit judge to hear the case. Attached to plaintiff's original petition is the wrongful termination petition that requests damages in an amount greater than $15,000, and this was sufficient "to determine the proper jurisdictional authority." Section 509.050.1(2). Defendant's second point is denied.

Defendant raises related arguments in his third and fourth points regarding plaintiff's first count for legal malpractice. Defendant contends that the trial court erred in denying his motion to dismiss, motion for directed verdict, and the portion of his post-trial motion for judgment notwithstanding the verdict, because plaintiff failed to state a cause of action for legal malpractice and the evidence did not prove this claim.

■■■■■■ The primary question when reviewing the trial court's denial of a motion for directed verdict or judgment notwithstanding the verdict is whether the plaintiff made a submissible case. *Ralph v. Lewis Bros. Bakeries, Inc.*, 979 S.W.2d 509, 514 (Mo.App. S.D.1998). To make a submissible case, substantial evidence is required for every fact essential to liability. *Steward v. Goetz*, 945 S.W.2d 520, 528 (Mo.App. E.D.1997). The question whether the evidence in a case is substantial and whether the inferences drawn are reasonable present questions of law. *Id.* We view the evidence in the light most favorable to the plaintiff, presume the plaintiff's evidence is true, and give the plaintiff the benefit of all reasonable and favorable inferences to be drawn from the evidence. *Id.* In addition, a party is bound by the uncontradicted testimony of that party's own witnesses, including that elicited on cross-examination. *Id.*

■■■■■■ In an action for legal malpractice, a plaintiff must plead and prove: (1) the plaintiff and the defendant had an existing attorney/client relationship; (2) the defendant acted negligently or in breach of contract; (3) such acts were the proximate cause of the plaintiff's damages; and (4) but for the defendant's actions, the plaintiff would have been successful in the prosecution of the underlying claim. *Egan v. Craig*, 967 S.W.2d 120, 124 (Mo.App. E.D.1998). Negligence alone does not warrant a recovery for a plaintiff in a legal malpractice case; there must also be damage proximately resulting from an attorney's malpractice. *Steward*, 945 S.W.2d at 532. "Where the evidence connecting the injury to the negligence amounts to mere conjecture and speculation, a contention that the plaintiff did not make a submissible case should be sustained." *Id.* The plaintiff has the burden to establish the defendant's negligence proximately resulted in damages to the plaintiff. *Id.* To prove damages and causation, the plaintiff must establish that, "but for" the attorney's negligence, the result of the underlying proceeding would have been different. *Id.*

■■■■■■ Defendant challenges plaintiff's underlying claim against Chicago Title, contending in part that under the holding in *Mein v. Masonite Corp.*, 109 Ill.2d 1, 92 Ill.Dec. 501, 485 N.E.2d 312 (1985), a claim for wrongful termination is not permitted in Illinois except for certain statutory and recognized exceptions. To determine whether plaintiff would have prevailed in an action against Chicago Title, analysis of the applicable Illinois law is required. In *Mein*, the Illinois Supreme Court considered a case where the plaintiff brought an action alleging the defendant wrongfully discharged him in violation of Illinois pub-

lic policy that prohibits age discrimination. *Mein*, 92 Ill.Dec. 501, 485 N.E.2d at 313. The trial court sustained the defendant's motion to dismiss for failure to state a cause of action. *Id.* On appeal, the plaintiff did not dispute that he was an employee at will and could be discharged at any time, for no cause, without the employer incurring any liability.[5] *Id.* at 314. The Illinois Supreme Court stated that the Illinois Human Rights Act provides comprehensive procedures to investigate and adjudicate alleged violations of Illinois' public policy against age discrimination. *Id.* The court held that by virtue of a certain provision in the Illinois Human Rights Act, the Illinois legislature had provided "that courts have no jurisdiction to hear independent actions for civil rights violations." *Id.* at 315. "It is clear that the legislature intended the [Illinois Human Rights] Act, with its comprehensive scheme of remedies and administrative procedures, to be the exclusive source for redress of alleged human rights violations." *Id.* The court concluded, "Thus, even taking all facts properly pleaded in the complaint as true ... the plaintiff's complaint did not state a cause of action for wrongful discharge." *Id.* Under the holding in *Mein*, plaintiff in the present case could not have maintained an action in circuit court against Chicago Title for wrongful discharge based on age discrimination.

Plaintiff contends that defendant pleaded "far more" than wrongful termination in the petition, and therefore the holding in *Mein* was not a bar to the action. Plaintiff, without citation to authority, asserts that the wrongful termination petition also pleaded breach of contract, promissory or equitable estoppel, slander, and breach of fiduciary duty. Plaintiff states further

that his testimony and exhibits "supported the factual allegations in the complaint." Plaintiff is therefore contending that he presented sufficient proof that he would have prevailed in an action against Chicago Title under theories of breach of contract, promissory or equitable estoppel, slander, and breach of fiduciary duty. We have reviewed the record and the applicable Illinois law and find that plaintiff failed to establish that he would have been successful under these theories in a cause of action against Chicago Title. *See Milazzo v. O'Connell*, 925 F.Supp. 1331, 1338–42 (N.D.Ill.1996); *McInerney*, 223 Ill.Dec. 911, 680 N.E.2d at 1349–53; *Dubinsky v. United Airlines Master Executive Council*, 303 Ill.App.3d 317, 236 Ill.Dec. 855, 708 N.E.2d 441, 446–47 (1st 1999); *Kirkruff v. Wisegarver*, 297 Ill.App.3d 826, 231 Ill.Dec. 852, 697 N.E.2d 406, 410–14 (4th 1998); *Jago v. Miller Fluid Power Corp.*, 245 Ill.App.3d 876, 185 Ill.Dec. 785, 615 N.E.2d 80, 81–83 (2d 1993); *Dickens v. Quincy College Corp.*, 245 Ill.App.3d 1055, 185 Ill. Dec. 822, 615 N.E.2d 381, 383–86 (4th 1993); *Ely v. National Super Markets, Inc.*, 149 Ill.App.3d 752, 102 Ill.Dec. 498, 500 N.E.2d 120, 126–28 (4th 1986).

Plaintiff also relies on defendant's statements regarding plaintiff's underlying claim against Chicago Title. Plaintiff quotes his testimony that defendant told him the case against Chicago Title had merit and a settlement value of $285,000. According to plaintiff, defendant "thus admitted that plaintiff had a viable cause of action against Chicago Title." Plaintiff relies on the holding in *Briggs v. King*, 714 S.W.2d 694 (Mo.App.1986), to support this argument.

5. In Illinois, employment contracts "are presumed to be at-will and are terminable by either party; this rule, of course, is one of construction which may be overcome by showing that the parties agreed otherwise." *McInerney v. Charter Golf, Inc.*, 176 Ill.2d 482, 223 Ill.Dec. 911, 680 N.E.2d 1347, 1349 (1997). Under the Illinois Statute of Frauds, a writing is required for enforcement of life-

time employment contracts. *Id.* at 1351–52. Furthermore, although "agreeing to work for an employer and giving up other employment opportunities can clearly be described as reliance on the employer's oral promises concerning the terms of employment, promissory estoppel does not bar the application of the statute of frauds in Illinois." *Id.* at 1352.

In that case, the plaintiffs brought a legal malpractice action against the defendant attorney for failing to file a wrongful death action within the statute of limitations. *Briggs*, 714 S.W.2d at 694. The underlying action for the wrongful death of Napoleon Briggs involved the alleged negligence by certain doctors and a hospital. *Id.* The plaintiffs made the following requests for admissions: the doctors were negligent; the doctors proximately caused the death of Napoleon Briggs; and the hospital breached the standard of care thereby causing the death of Napoleon Briggs. *Id.* at 697. The defendant did not answer or deny these requests for admissions and the trial court denied his request to withdraw the admissions. *Id.* After the jury returned a verdict for the plaintiffs' claim of legal malpractice, the trial court granted the defendant's motion for judgment notwithstanding the verdict. *Id.*

On appeal, the court recognized that plaintiffs in a legal malpractice action must prove that they had a valid claim or defense. *Id.* at 698. The issue was whether the plaintiffs proved they would have been successful in the underlying action against the doctors and the hospital. *Id.* at 697. The plaintiffs argued they were entitled to rely on the defendant's admissions. *Id.* The court quoted the following from Rule 59.01(b), now (c), as to the effects of admissions, "Any matter admitted under this Rule is conclusively established." *Id.* at 697. The court reversed the trial court's grant of judgment notwithstanding the verdict, holding it was not necessary for the plaintiffs to have produced expert evidence on the issues of negligence and proximate cause because the jury had the "binding admissions" of negligence and proximate cause of death for the underlying wrongful death case. *Id.* at 698.

In the present case, there were no admissions pursuant to Rule 59.01. Further, defendant's statements notwithstanding, there is insufficient proof that plaintiff would have been successful under any theory of liability in an action against Chicago

Title. Given the applicable Illinois law to plaintiff's cause of action against Chicago Title, we do not find that defendant's statements regarding the case including settlement value, are sufficient. We note that plaintiff's wife testified that defendant told her that the case had been settled for $280,000. She also testified that defendant said that he sent releases for the settlement and gave her a Federal Express number for the mailing. When plaintiff's wife called Federal Express with the number given by defendant, she was told there was no such number. Although we presume that a plaintiff's evidence is true, plaintiff's wife's testimony does not establish Chicago Title agreed to settle or would have settled but only that defendant told her the case was settled. Again, given the applicable Illinois law to plaintiff's claim, it is speculative that Chicago Title would have settled the case. Because plaintiff failed to prove he would have been successful in his underlying claim against Chicago Title, the trial court's judgment as to the legal malpractice count must be reversed.

■■■ Defendant's argument in his fifth point relates to the legal malpractice count and need not be addressed. Defendant argues in his sixth point that plaintiff's second count for fraud in the amended petition was barred by the statute of limitations.

■■■ The applicable statute of limitations for a fraud claim is five years. Section 516.120(5); *Community Title Co. v. U.S. Title Guaranty Co., Inc.*, 965 S.W.2d 245, 252 (Mo.App. E.D.1998). Section 516.120(5) provides that fraud claims are not deemed to have "accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud." Section 516.120(5) therefore gives a plaintiff ten years from the date of the fraudulent act to discover the fraud. *Id.* An action for fraud accrues when the plaintiff discovered or in the exercise of due diligence, should have discovered the fraud. *Saidawi v. Giovanni's*

*Little Place, Inc.,* 987 S.W.2d 501, 506 (Mo.App. E.D.1999); *Community Title Co.,* 965 S.W.2d at 252.

We find that plaintiff's fraud action accrued on July 3, 1989, when he discovered, within ten years of the fraudulent act, that defendant had not filed the wrongful termination petition in Illinois. However, plaintiff brought the fraud count in his amended petition more than five years later on August 23, 1994. At issue is whether plaintiff's fraud count in his amended petition relates back to the date he filed his original petition, August 2, 1991. Defendant contends that the second count did not relate back to the filing of the original petition. We disagree.

Rule 55.33(c) provides "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." The effect of the adoption of Rule 55.33(c) in 1973 was the abrogation of the "same evidence" and "theory of law" tests in favor of "the conduct, transaction, or occurrence" test. *Koenke v. Eldenburg,* 753 S.W.2d 931, 932 (Mo. banc 1988); *Ingham v. R.W. Beal & Co., Inc.,* 784 S.W.2d 235, 237 (Mo.App.1989). "The language, " 'conduct, transaction or occurrence,' " as used in Rule 55.33(c), is accorded broad and liberal construction." *State ex rel. Stephens v. Henson,* 772 S.W.2d 706, 712 (Mo.App. 1989).

Plaintiff alleged in his original petition that defendant prepared a complaint on plaintiff's behalf for "wrongful termination of employment" to be filed in Illinois state court. Plaintiff also alleged defendant was negligent in failing to timely file his wrongful termination complaint. For the fraud count in his amended petition, plaintiff alleged that defendant represented that he filed the wrongful termination action in Illinois state court. Plaintiff's fraud claim "arose out of the conduct, transaction or occurrence" set forth in the original petition. Under Rule 55.33(c), plaintiff's fraud claim relates back to the date of the original petition, August 2, 1991. Because plaintiff's fraud claim accrued on July 3, 1989, the statute of limitations, section 516.120(5), does not bar the fraud claim. Defendant's sixth point is denied.

We have reviewed defendant's remaining arguments as to the fraud count and find no error of law. Furthermore, no jurisprudential purpose would be served by an extended written opinion for these arguments. Defendant's arguments as to the fraud count that were not previously addressed are denied. Rule 84.16(b).

The trial court's judgment as to the fraud count is affirmed and as to the legal malpractice count is reversed.

KENT E. KAROHL, and MARY K. HOFF, JJ., Concur.