Dr. Dixie Cranmer McREYNOLDS, et al., Appellants,

v.

Dr. Jerome J. MINDRUP, D.D.S., et al., Respondents.

No. WD 60747.

Missouri Court of Appeals, Western District.

Oct. 1, 2002.

Rehearing Denied Nov. 26, 2002.

---

Joseph R. Borich, III, Leawood, KS, for appellant[s].

Timothy S. Frets, Kansas City, MO, for respondent[s].

**664**

Before JOSEPH M. ELLIS, Chief Judge, THOMAS H. NEWTON, Judge and LISA WHITE HARDWICK, Judge.

JOSEPH M. ELLIS, Chief Judge.

Dixie Cranmer McReynolds, Ph.D., and her husband, William R. McReynolds, filed a petition for damages against Jerome J. Mindrup, D.D.S., in the Circuit Court of Jackson County. The McReynolds asserted that Dr. McReynolds had asked Dr. Mindrup to remove an old amalgam filling and replace it with a filling that did not contain mercury because she was afraid of the effects of mercury on her health. The McReynolds claimed that, on October 8, 1992, Dr. Mindrup removed the old filling in an improper manner and that he replaced it with another amalgam filling that contained mercury. The McReynolds asserted claims of dental malpractice, assault and battery, and loss of consortium based upon the alleged conduct of Dr. Mindrup. They also requested punitive damages.

After the McReynolds and Dr. Mindrup had filed pleadings designating their various experts, on June 22, 1998, Dr. Mindrup filed his Motion to Exclude Expert Testimony Under the *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923) Doctrine. In that motion, Dr. Mindrup challenged various testimony sought to be offered by the McReynolds from their four designated experts.[1]

On July 10, 1998, the McReynolds filed a motion to exclude the results of urine tests or any reference to those tests under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Frye v. United States*. On

July 14, 1998, the McReynolds filed a motion to preclude the testimony of Dr. John Osborne related to Dr. McReynolds exposure to and absorption of mercury.

Beginning on August 31, 1998, the trial court conducted a five-day evidentiary hearing on the parties' motions. On January 27, 1999, the trial court entered its "Partial Judgment" finding that the expert testimony proffered by Appellants four experts was not admissible. In relevant part, the trial court's partial judgment stated:

IT IS FURTHER ORDERED that the Plaintiffs' experts' testimony does not meet the requirements for admissibility under the *Frye* standard. The testimony of G. Mark Richardson, Walter Clifford, David Kennedy, and Fuller Royal do not fall under the admissible evidence standard required by Frye and its progeny in Missouri case law and are hereby found to be inadmissible at trial in this case.

The court also denied Appellants' motion to preclude evidence related to the urine tests and their motion to exclude Dr. Osborne's testimony on mercury exposure. The court also denied Respondent's motion for summary judgment.

Subsequent to the trial court's entry of its Partial Judgment, the case was transferred to a different judge. Following that transfer, Respondent filed another motion for partial summary judgment claiming that Appellants could not establish a *prima facie* case of professional negligence without presenting any expert testimony related thereto. On September 2, 1999,

---

1. In the suggestions in support of his *Frye* motion, Respondent asked the trial court to enter an order precluding Appellants' proffered experts "from testifying regarding general causation, specific causation, serum compatibility or material reactivity testing, homeopathic remedies, electrodiagnostic acupuncture, heart rate variability testing, and any alleged medical condition of plaintiff, including the purported diagnoses of mercury allergy, sensitivity, hypersensitivity or toxicity, for the reasons such testimony fails to meet the requirements of *Frye* and *Daubert*."

the trial court granted Respondent's motion for partial summary judgment finding that Appellants could not establish a *prima facie* case of professional negligence without the benefit of any expert testimony. The trial court also determined that its summary judgment order should be deemed a "judgment" in favor of Respondents and certified its order as final and appealable under Rule 74.01(b).

Subsequently, Appellants filed their appeal challenging the trial court's exclusion of their expert witnesses, failure to exclude Respondent's expert witnesses, and the propriety of the partial summary judgment. On appeal, this court *sua sponte* found that the trial court had improperly certified the matter as proper for appeal under Rule 74.01(b) because its "judgment" did not resolve the McReynolds' battery claim. *McReynolds v. Mindrup,* 32 S.W.3d 163, 166–67 (Mo.App. W.D. 2000).

Following remand to the trial court, on February 22, 2001, Appellants voluntarily dismissed their battery claim. On March 5, 2001, Appellants filed their second notice of appeal. This Court subsequently dismissed Appellants appeal pursuant to Rule 74.01(a) because the trial court had not entered a final judgment in the matter and remanded the case once again to the trial court.

On November 20, 2001, the trial court entered its Judgment granting Respondent's motion for summary judgment. The trial court found that the dismissal of Appellants' battery claim fully resolved the matter. Appellants bring twelve points on appeal from that judgment.

We initially address Appellants' argument that the trial court's order precluding any testimony from any of their four designated expert witnesses under *Frye* was erroneous because the order excluded testimony and evidence that was not chal-lenged by Respondent and because it excluded testimony and evidence to which *Frye* was inapplicable.

Based upon our review of Respondent's suggestions in support of his *Frye* motion, it does appear likely that the trial court excluded evidence that was not challenged by Respondent and exceeded the relief requested by him. However, while Appellants argue on appeal that the trial court's order went beyond the scope of Respondent's motion, Appellants have failed to include a copy of that motion in the record on appeal and have, therefore, provided us with an insufficient record from which to assess this contention.

■ We next turn to whether the trial court's order precluded testimony that was not subject to a *Frye* challenge. The "[a]dmissibility of expert testimony is governed by § 490.065." *Roy v. Missouri Pac. R.R. Co.,* 43 S.W.3d 351, 365 (Mo.App. W.D.2001). "Under § 490.065, the determination of the admissibility of expert testimony is left to the sound discretion of the trial court," and, therefore, the "trial court's ruling as to the exclusion of evidence will not ordinarily be overturned unless it is an abuse of discretion." *In re Estate of Dean,* 967 S.W.2d 219, 224 (Mo. App. W.D.1998). "An abuse of discretion occurs when the trial court's ruling is so arbitrary and unreasonable that it shocks this court's sense of justice and it is clearly against the logic of the surrounding circumstances." *Id.* Under this standard of review, " '[a] trial court does not usually commit reversible error by mere exclusion of expert testimony, even if the offered testimony is relevant and admissible.' " *Bella v. Turner,* 30 S.W.3d 892, 896 (Mo. App. S.D.2000) (quoting *In re Estate of Dean,* 967 S.W.2d at 224).

■ In the case at bar, the trial court precluded all testimony from any of Appel-

lants' four designated experts, finding that none of their testimony met the requisite standard for admissibility set forth in *Frye v. United States*, 293 F. 1013, 1014 (D.C.Cir.1923).[2] "Missouri has generally followed the *Frye* test for the admissibility of new scientific techniques." *Long v. Missouri Delta Med. Ctr.*, 33 S.W.3d 629, 642 (Mo.App. S.D.2000). Under *Frye*, "the results of scientific procedures may be admitted only if the procedure is 'sufficiently established to have gained general acceptance in the particular field to which it belongs.'" *State v. Love*, 963 S.W.2d 236, 242 (Mo.App. W.D.1997) (quoting *State v. Kinder*, 942 S.W.2d 313, 326 (Mo. banc 1996)). "The *Frye* standard was modified by the Missouri Supreme Court in *State v. Biddle*, 599 S.W.2d 182, 191 (Mo.1980), which stated that for scientific evidence to be admitted, 'wide scientific approval' of the reliability of the scientific techniques employed is required." *Long*, 33 S.W.3d at 642.

■ The *Frye* doctrine has also been applied to preclude expert testimony related to scientific techniques or principles that do not have wide scientific approval and any opinions formed by the expert on the basis of such principles or techniques. "'*Frye* requires ... that expert testimony be based on scientific principles generally accepted in the relevant scientific community.'" *Id.* (quoting *M.C. v. Yeargin*, 11 S.W.3d 604, 619 (Mo.App. E.D.1999)); *See also State v. Butler*, 24 S.W.3d 21, 32 (Mo.App. W.D.2000). Accordingly, to be admissible, an expert's opinion must be based upon generally accepted scientific studies, principles and methods. *Butler*, 24 S.W.3d at 32. Where an expert's methodology is not generally accepted in the relevant scientific field, a trial court is within its discretion to limit the expert's testimony by excluding testimony related to that methodology and any opinions arising therefrom. *Love*, 963 S.W.2d at 242.

■ "While there has been some confusion on the issue, *Frye* generally is not considered to be applicable when the testimony sought to be admitted does not involve scientific techniques." *Long*, 33 S.W.3d at 642. The trial court's order in the case at bar clearly exceeded these confines.

Certainly, the trial court would likely have been well within its discretion to have excluded much of the testimony offered by

**2.** Respondent's motion challenged the admission of various testimony from Appellant's experts under the *Frye* doctrine, and the trial court expressly precluded all of Appellants' experts' testimony based upon a finding that the elements required under *Frye* and its progeny in Missouri case law had not been established. Since the trial court based its decision entirely on *Frye*, we address only the issue of whether the trial court abused its discretion in entirely precluding the experts from testifying based upon those findings and whether summary judgment was properly entered based upon the total lack of expert testimony.

While we approach the issues in this manner, we are nevertheless mindful that the observation we made in *Schumann v. Missouri Highway & Transp. Comm'n*, 912 S.W.2d 548, 557 (Mo.App. W.D.1995), is still valid:

The question of whether § 490.065 supersedes the *Frye* doctrine in the same fashion that *Daubert* found Rule 702 changes the requirements for admissibility of expert testimony in federal cases has not yet been decided by our Supreme Court. In *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852 (Mo. banc 1993), the court recognized the existence of the issue, but found that under the circumstances of that case, it would be inappropriate to decide the question.

Thus, no Missouri case has yet decided what, if any, impact adoption of § 490.065 has on the application of the *Frye* "general acceptance" rule, much less whether it compels application of the *Daubert* standard.

We do not address those undecided issues in deciding this appeal.

Appellant's witnesses at the *Frye* hearing under the applicable standards, however, the trial court's wholesale exclusion of any testimony from these witnesses clearly exceeds the scope of a *Frye* challenge. And, while even more of the experts' testimony may later be found to be inadmissible for other reasons, the trial court's reliance on *Frye* to preclude any and all testimony from these witnesses constitutes an abuse of discretion.

One of the experts that was precluded from testifying, Dr. Kennedy, performed dental work on Dr. McReynolds a few months after Dr. Mindrup replaced her old filling. Dr. Kennedy removed the amalgam filling installed by Dr. Mindrup and replaced it with a filling that did not contain mercury.

Another of Appellant's designated experts, Dr. Royal, provided her with treatment starting in February 1995. While the treatments prescribed by Dr. Royal were "homeopathic remedies," which are not accepted by the majority of the medical profession at large, Dr. Royal was a medical doctor who provided treatment to Dr. McReynolds.

■ A medical professional that provides treatment to the plaintiff "is first and foremost a fact witness, as opposed to an expert witness," and "only functions as an expert witness to the extent that one or both of the parties ask the witness to use the basic facts to draw conclusions and express opinions on relevant medical issues." *Brandt v. Medical Def. Assocs.*, 856 S.W.2d 667, 673 (Mo. banc 1993). Any testimony that these witnesses had to offer as fact witnesses regarding their treatment of Dr. McReynolds could not properly be excluded under *Frye*. While the trial court may later find Dr. Royal's testimony related to his treatment of Dr. McReynolds to be inadmissible as irrelevant because the treatment may have been based on a diagnosis excludable under the *Frye* standard, or for some other reason, *Frye* is simply not applicable to prevent a treating medical professional from testifying that he provided treatment to the plaintiff. Under *Frye*, the trial court could only preclude testimony from treating medical professionals that related to scientific studies, methodologies, principles, tests, and technology that are not generally accepted in the relevant field and any medical opinions, diagnosis, or conclusions drawn by those individuals. *Butler*, 24 S.W.3d at 32.

Furthermore, one of Respondent's primary points in his motion for summary judgment was that, after the trial court precluded any testimony from Appellants' experts, Appellants had no expert that could testify about the standard of care and, therefore, could not establish a *prima facie* case for malpractice. Under the circumstances of this case, given the testimony and argument offered during the *Frye* hearing, the trial court's blanket preclusion of Appellant's expert testimony related to the generally recognized standard of care in the dental profession cannot have been proper.

■ "Generally, in a ... malpractice case, a plaintiff must introduce expert testimony to prove that the defendant failed to exercise the degree of skill and care ordinarily used under the same or similar circumstances by members of his or her profession." *Boehm v. Pernoud*, 24 S.W.3d 759, 761 (Mo.App. E.D.2000). "The requisite standard of care is that degree of skill and learning ordinarily exercised under the same or similar circumstances by members of the profession." *Vititoe v. Lester E. Cox Med. Ctrs.*, 27 S.W.3d 812, 820 (Mo.App. S.D.2000).

Dr. Kennedy is a licensed dentist, and his testimony reflects that he is aware of the standards followed by the vast major-

ity of the dental community. Appellants' pleadings reflect that they were going to rely upon Dr. Kennedy's testimony to establish the proper standard of care. By definition, the standard of care must be generally accepted by the relevant medical community, in this instance, the dental community. The practice and beliefs of a limited number of members of the profession does not constitute the appropriate standard of care. *Id.* To the extent that Dr. Kennedy wishes to testify regarding his opinion that the standard of care generally recognized by his profession is inappropriate, the trial court may well determine that such testimony should be excluded as irrelevant to whether Dr. Mindrup followed the currently accepted standard of care in his profession. However, the trial court cannot properly issue a blanket preclusion of Appellant's expert testimony related to the generally recognized standard of care in the dental profession.

Likewise, all of the experts presented by Appellant offered testimony related to who they were and what their qualifications were. While such testimony may ultimately be irrelevant to the case if they have no admissible opinions or other testimony to offer, most, if not all, of this testimony does not have anything to do with scientific methodologies or techniques and cannot properly be excluded under *Frye.*

Because the trial court's order improperly excluded at least the foregoing testimony under the *Frye* doctrine, the trial court's order is clearly over-broad. The trial court abused its discretion in entering such an order.

Aside from the lack of testimony to establish the proper standard of care, the only other reason asserted by Respondent to support his motion for summary judgment was a claim that, without the proffered expert testimony, Appellants would not be able to establish that Dr. McReynolds had mercury toxicity or that it was causally connected to Dr. Mindrup's treatment of her. While the trial court may have properly precluded testimony related to tests for mercury toxicity not recognized in the medical community; any diagnosis of mercury toxicity based upon studies, principles, tests or methodologies not generally recognized in the medical community; and general opinions related to whether the filling amalgam can cause mercury toxicity, mercury toxicity was not the only condition complained of in Appellants' petition. Appellant asserted other damages related to Dr. Mindrup's replacement of her filling with a material that she had asked him not to use, including the costs associated with corrective dental work and general pain and suffering. Respondent offered no argument related to Appellants' ability to establish such damages or a causal connection between those damages and Dr. Mindrup's replacement of her filling. Accordingly, summary judgment could not have been properly granted based upon an inability of Appellants to establish damages or causation.

In granting Respondent's motion for summary judgment, the trial court based its decision on Appellants' malpractice claim on the fact that Appellants were precluded from presenting any expert testimony. Having found that the trial court's order precluding that testimony was over-broad, the grant of summary judgment cannot stand. Factual issues still exist regarding whether Dr. Mindrup violated the proper standard of care and whether Appellants suffered any injury as a result of any such breach. Accordingly, the trial court's judgment must be reversed and remanded for further proceedings. Because the trial court will need to reconsider and redefine its order related to Appellants' proffered expert testimony

on remand, we need not address Appellants' remaining claims of error related to the trial court's exclusion of that testimony.

All that remains are Appellants' points challenging the trial court's denial of their motions *in limine* to preclude the testimony of Respondent's various experts and test results. "The denial of a motion *in limine* is interlocutory and presents nothing for appellate review." *In re K.K.J.*, 984 S.W.2d 548, 554 (Mo.App. S.D.1999) (italics added). Points denied.

The judgment of the trial court is reversed and the cause remanded for further proceedings consistent with this judgment.

All concur.