DAY ADVERTISING INC., Appellant,

v.

DEVRIES AND ASSOCIATES, P.C.,
F. Coulter Devries, and Daniel
R. Jones, Respondents.

No. WD 66586.

Missouri Court of Appeals,
Western District.

March 27, 2007.

Todd A. Nielsen, Kansas City, MO, for appellant.

Byron A. Bowles, Jr., Roeland Park, KS, for respondent.

Before JOSEPH M. ELLIS, Presiding Judge, PAUL M. SPINDEN, Judge and JAMES M. SMART, JR., Judge.

JOSEPH M. ELLIS, Judge.

Appellant Day Advertising, Inc.[1] appeals a judgment for the defense in its legal malpractice suit against Respondents DeVries & Assoc., P.C., F. Coulter DeVries, and Daniel R. Jones. For the following reasons, we affirm the trial court's judgment.

Appellant hired Respondents to represent it in litigation against a former employee arising from the employee's alleged violation of a non-compete clause in his employment contract. After filing various lawsuits, Respondents negotiated a settlement of all claims between Appellant and the former employee. Appellant perceived

---

1. Although James Day was a co-plaintiff at trial, he is not a party to this appeal.

the settlement terms as unfavorable and sued Respondents for legal malpractice, alleging eleven separate negligent acts.

The case was tried by jury over the course of eight days. At the close of Appellant's evidence, Respondents moved for a directed verdict on various grounds, but the trial court granted the motion only as to Appellant's claims of negligence related to the filing of an action in federal court. The jury returned a verdict assessing 10% fault to Respondent DeVries, 5% fault to Respondent Jones, and 85% fault to Appellant. Despite having found fault on the part of Respondents, the jury awarded no damages to Appellant. There were no objections to the verdict at that time, and the court subsequently entered a judgment consistent with the verdict.

Appellant filed a timely motion for new trial. This motion was not ruled upon and, as Appellant concedes, was overruled by effect of law. *See Rule 78.06.* This appeal follows.

■ For its first point on appeal, Appellant argues that the trial court erred in permitting two expert witnesses to testify on behalf of Respondents because they were identified several months after the deadline established by the court's scheduling order. Appellant contends that prejudice is inferred by the late identification and that it was, therefore, unable to adequately prepare for trial and cross-examination of these experts.

■ We note, initially, that Appellant failed to preserve this point for appeal because Appellant did not object to the expert witnesses' testimony at the time it was presented. Although Appellant objected to the testimony in a pretrial motion *in limine,* which was denied by the trial court, this alone does not preserve the issue for appeal. " 'A motion in limine, by itself, preserves nothing for appeal.' To

preserve an evidentiary issue on appeal, a party is required to object at trial to the introduction of the evidence and to reassert the objection in post trial motions." *Peters v. General Motors Corp.,* 200 S.W.3d 1, 15 (Mo.App. W.D.2006) (quoting *Hancock v. Shook,* 100 S.W.3d 786, 802 (Mo. banc 2003)).

■ Because this issue was not properly preserved, our review is limited to plain error. "Plain error affecting substantial rights may be considered on appeal, at this court's discretion, even when not raised or preserved, when we find manifest injustice or a miscarriage of justice has resulted." *Guess v. Escobar,* 26 S.W.3d 235, 241 (Mo. App. W.D.2000) (citing *Rule 84.13(c)* ).

Under Rule 84.13(c), plain error review involves a two-step process. First, we determine whether the claimed error facially establishes substantial grounds for believing that a manifest injustice or miscarriage of justice has resulted. In other words, we must first determine whether, on the face of the claim, plain error has, in fact, occurred. Errors are plain if they are evident, obvious, and clear. In the absence of such error, we should decline to exercise our discretion to review the claimed error under Rule 84.13(c). If we find plain error on the face of the claim, we may proceed, at our discretion, to the second step to consider whether a miscarriage of justice or manifest injustice will occur if the error is left uncorrected.

*Pope v. Pope,* 179 S.W.3d 442, 459 (Mo. App. W.D. banc 2005) (internal quotation omitted).

■ "Under § 490.065, the determination of the admissibility of expert testimony is left to the sound discretion of the trial court, and, therefore, the trial court's ruling as to the exclusion of evidence will not ordinarily be overturned unless it is an abuse of discretion." *McReynolds v.*

*Mindrup,* 108 S.W.3d 662, 665 (Mo.App. W.D.2002); *abrogated on other grounds* (internal quotations omitted).

> Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.

*Blake v. Irwin,* 913 S.W.2d 923, 931 (Mo. App. W.D.1996) (quotation omitted). When reviewing the trial court's decision regarding issues arising from pre-trial discovery, "[w]e look only for an abuse of this broad discretion which results in prejudice or unfair surprise." *Ellis v. Union Elec. Co.,* 729 S.W.2d 71, 74 (Mo.App. E.D.1987).

■ Respondents were ordered to name their expert witnesses by August 25, 2004. Respondents never formally identified the two expert witnesses in question, but they advised Appellant's trial counsel of them on February 10, 2005. Appellant objected to the designation of the expert witnesses during a telephone hearing on February 16, 2005. The trial court overruled the objection, ordered the experts to be deposed by March 10, 2005, and continued the trial to April 18, 2005.[2] Appellant's trial counsel deposed the witnesses on March 1, 2005, and March 22, 2005.

Far from "facially establish[ing] substantial grounds for believing that a manifest injustice or miscarriage of justice has resulted," *Pope,* 179 S.W.3d at 459, the trial court's orders continuing the trial for more than two months and assuring that Appellant had the opportunity to depose the witnesses well before the trial date conclusively demonstrate that there was no error, plain or otherwise. The trial court did not abuse its discretion, and there certainly was no manifest injustice or miscarriage of justice. Point denied.

■ Appellant asserts in its second point that the trial court erred in allowing Respondents to present evidence regarding consideration and liquidated damages in the underlying suit because they did not plead these issues as affirmative defenses in the legal malpractice suit. Appellant argues that the failure to plead these issues resulted in prejudice and unfair surprise to Appellant on the issue of causation in the legal malpractice suit.

■ As with its first claim, Appellant failed to preserve this issue for appeal. "To preserve evidentiary questions for appeal, there must be an objection giving the grounds at the time the evidence is sought to be introduced, and the same objection must be set out in the motion for new trial then carried forward in the appeal brief." *Enos v. Ryder Auto. Operations, Inc.,* 73 S.W.3d 784, 788–89 (Mo.App. E.D.2002) (internal quotation omitted). Although Appellant did object to some of the testimony, the objections were based on "immateriality" and did not point out to the court the alleged error of failure to plead an affirmative defense. Accordingly, our review is again limited to plain error.

Here again, we must first determine whether the claim "facially establishes substantial grounds for believing that a manifest injustice or miscarriage of justice has resulted." *Pope,* 179 S.W.3d at 459.

■ Appellant's brief focuses on Respondents' handling of the underlying breach of contract claim against Appellant's former employee. Appellant sought damages from its former employee under a liquidated damages clause. All claims

---

**2.** We are unable to determine from the record the date of the original trial setting.

were eventually settled. Appellant argues that, but for Respondents' alleged negligence, Appellant would have recovered liquidated damages in the underlying contract action. At trial on the legal malpractice action, Respondents presented the evidence at issue to show that there was inadequate consideration for the employment contract[3] and that the liquidated damages clause was unenforceable. Appellant contends that these were affirmative defenses and that, therefore, Respondent was required to plead them in their answer to the legal malpractice action.[4]

Appellant overlooks its own burden in the legal malpractice suit. "The plaintiff [in a legal malpractice suit] has the burden to establish the defendant's negligence proximately resulted in damages to the plaintiff." *Mogley v. Fleming*, 11 S.W.3d 740, 747 (Mo.App. E.D.1999). "[B]ecause the alleged damages are based on the resolution of the underlying action . . ., the plaintiff must prove a 'case within a case.'" *Williams v. Preman*, 911 S.W.2d 288, 294 (Mo.App. W.D.1995), *overruled on other grounds by Klemme v. Best*, 941 S.W.2d 493, 496 (Mo. banc 1997). The plaintiff "must prove that [it] had a valid claim or defense." *Mogley*, 11 S.W.3d at 749 (citing *Briggs v. King*, 714 S.W.2d 694, 698 (Mo.App. W.D.1986)). When bringing a legal malpractice action after settling the underlying action, "[t]he plaintiff's obligation is to prove that the settlement was necessary to mitigate damages, or that plaintiff was driven to the necessity of settling because, if the case had not been settled, plaintiff would have been worse off." *Collins v. Mo. Bar Plan*, 157 S.W.3d

726, 736 (Mo.App. W.D.2005) (internal quotations omitted).

Thus, in order to prevail in the legal malpractice action, Appellant must prove that it could have overcome any affirmative defenses in the underlying suits had the case not been settled. "An affirmative defense declares that even if the allegations in the plaintiff's petition are established, the plaintiff cannot prevail because additional facts exist which avoid the legal responsibility of the defendant." *Rodgers v. Czamanske*, 862 S.W.2d 453, 459 (Mo.App. W.D.1993). Respondents' evidence was presented to negate an element of Appellant's case, specifically, that it would have prevailed in the underlying case but for Respondents' actions. As such, the evidence was not utilized as an affirmative defense to the legal malpractice suit.

It was Appellant's burden, not Respondents', to show that it could have prevailed in the underlying suit. *See Mogley*, 11 S.W.3d at 749; *Collins*, 157 S.W.3d at 736. Therefore, Respondents were not required to plead the issues of consideration and liquidated damages in the underlying suit in their answer to the legal malpractice petition. It was enough that Respondents denied Appellant's allegation that, but for Respondents' alleged negligence, Appellant would have been successful in the underlying suit, thus placing causation at issue in the legal malpractice action. As in Point I, there once again was no error, plain or otherwise. Point II is denied.

For its third point, Appellant argues that the trial court erred in entering a judgment consistent with the jury's verdict because the verdict was inconsistent,

---

**3.** "Consideration . . . is a basic element of a valid contract." *Sumners v. Service Vending Co.*, 102 S.W.3d 37, 41 (Mo.App. S.D.2003).

**4.** "The defendant must plead all available affirmative defenses," and "[a]ffirmative defenses are waived if they are not responsively pled." *Rodgers*, 862 S.W.2d at 459.

in that it assessed fault against Respondents but did not assess any damages.

■ "[T]he general rule is that an objection to inconsistency in verdicts must be made before the jury is discharged. If such an objection is not made at this time the error is deemed waived." *City of Independence for Use of Briggs v. Kerr Constr. Paving Co., Inc.*, 957 S.W.2d 315, 319–20 (Mo.App. W.D.1997) (citing *Bank of Kirksville v. Small*, 742 S.W.2d 127, 128–29 (Mo. banc 1987), additional internal citation omitted). This rule was first announced in *Douglass v. Safire*, 712 S.W.2d 373 (Mo. banc 1986):

> [A] claim that a verdict is inconsistent to the point of being self-destructive must be presented to the trial court before the jury is discharged. Otherwise the claim of inconsistency will be held to have been waived. The reason is that, if the point is raised as soon as the verdict is returned, any error is capable of correction by ordering the jury to return for further deliberation. Our holding is in accord with the usual rule that the trial court must be given the opportunity to correct error while correction is still possible.

*Id.* at 374; *see also Ivy v. Wal–Mart Stores, Inc.*, 777 S.W.2d 682, 684 (Mo.App. W.D.1989). *Douglass* held that "cases [which hold that a claim of inconsistent verdict is not waived by failure to present it to the court before the jury is dis-

charged] should no longer be followed." *Jorgensen v. City of Kansas City*, 725 S.W.2d 98, 104 (Mo.App. W.D.1987).

Appellant admits that it did not object to the verdict before the jury was discharged but argues that it did not have the opportunity to object at trial and should, therefore, not be deemed to have waived that right. Appellant relies on *Thorne v. Thorne*, 350 S.W.2d 754 (Mo.1961), in which our Supreme Court held that counsel did not waive its objection to inconsistency in the verdict by failing to object before the jury was excused.[5] *Id.* at 759. The Court reasoned that counsel did not have "sufficient opportunity to realize the real invalidity in the verdict until after the jury was excused." *Id.* The trial court read the verdict aloud and questioned the jury about the damage awards, then indicated that it was going to make a notation on the verdict and have counsel look at the form. *Id.* at 756. Immediately after this, the transcript indicates "Jury Excused." *Id.* The Court noted, "There is nothing in the record to indicate that counsel for either party had seen the paper up to this point." *Id.* The court and counsel then discussed the verdict, and counsel for defendant moved for the verdict to be stricken as inconsistent. *Id.*

Unlike *Thorne*, the record in the case at bar does not reflect that counsel lacked an opportunity to discover any invalidity in

---

**5.** This Court has recognized that *Thorne* was overruled by *Douglass*, at least as far as it holds that the trial has a duty to correct an inconsistent verdict regardless of whether a party objects prior to the discharge of the jury. *Jorgensen*, 725 S.W.2d at 104.

> *Douglass* holds to the contrary: in the absence of objection before the discharge of the jury, an inconsistent and self-destructive verdict will sustain a judgment. Accordingly, *Douglass* relegates to the litigant, and not to the court, the obligation to protect its interest in the verdict by timely objection.

> In a word, *Douglass* overrules not only the opinions named—*Scott [v. Davis*, 684 S.W.2d 872 (Mo.App.1984)] and *Stroud [v. Govreau*, 495 S.W.2d 682 (Mo.App.1973)]— but also the opinions unnamed—*Thorne* issued in Supreme Court division, *Boone v. Richardson*, 388 S.W.2d 68 (Mo.App.1965) and those others of that ilk decided under the authority of *Thorne*.

*Id.* However, the analysis of whether counsel had the opportunity to object before the jury was excused is still instructive.

the verdict before the jury was excused. Here, the trial court read the entire verdict form aloud, noted the jurors' signatures, and asked counsel to come forward to look at the verdict form and poll the jury if desired. Both attorneys indicated that they were satisfied with the form, saying, "That is fine" and "I don't need the jury polled." The court then extensively thanked the jury for their extended service,[6] heard a final comment from one of the jurors, and discharged them. The court's Jury Trial Minutes and Judgment state, "Counsel examine the verdict form. Without objection, the Court accepts the verdict of the jury, and the jury is discharged." Unlike counsel in *Thorne*, Appellant's counsel actually saw the verdict form before the jury was excused but failed to object at that time, and the jury was not dismissed immediately after the verdict was read. Notably, Appellant did not voice any objection until its Motion for New Trial, which was filed more than a month after the verdict was rendered. Thus, Appellant waived its objection to any inconsistencies in the verdict. Point III is denied.

Appellant claims in its fourth point that the trial court erred in granting Respondents' motion for directed verdict as to Appellant's claim of negligence for filing an allegedly meritless anti-trust action in federal court. Appellant insists that there was sufficient evidence introduced to support every element of the claim and that, therefore, it should have been submitted to the jury.

 "When reviewing a directed verdict granted in favor of a defendant, we view the evidence and permissible inferences in the light most favorable to the plaintiff, disregard contrary evidence and inferences, and determine whether, on the evidence so viewed, plaintiff made a submissible case." *Mprove v. KLT Telecom, Inc.*, 135 S.W.3d 481, 494 (Mo.App. W.D. 2004). " 'A case should not be submitted to the jury unless each and every fact essential to liability is predicated upon legal and substantial evidence.' " *Id.* at 489 (quoting *Kenney v. Wal–Mart Stores*, 100 S.W.3d 809, 814 (Mo. banc 2003) (internal quotation omitted)).[7]

 Appellant argues that its expert's testimony showed that Respondents breached the relevant standard of care in filing the federal court action and that Appellant's exhibit clearly demonstrated damages resulting from that breach of care. Respondents' argument at the motion focused on the lack of evidence regarding damages. The trial court did not specify whether the motion was sustained due to the lack of evidence regarding the breach or damages, but it appears that the ruling was based on the lack of damages.[8]

6. The court's final speech to the jury was fairly lengthy, spanning approximately 2 1/2 pages of the transcript, or approximately six paragraphs.

7. We note that the case cited by Appellant for support of its contention that it satisfied all the elements for surviving a motion for directed verdict, *Klemme v. Best*, 941 S.W.2d 493 (Mo. banc 1997), is wholly inapplicable. The case addresses a motion to dismiss for failure to state a claim, not a motion for directed verdict; the claims involved an attorney's breach of fiduciary duty, not legal malpractice; and damages were mentioned only for

the purpose of determining whether the statute of limitations had run. *Id.* at 495–497. The other case cited, *Faulkner v. Ensz*, 109 F.3d 474 (8th Cir.1997), is a federal case, and Appellant offers no explanation as to why it should apply.

8. The court stated that it did not recall Appellant's expert having included the filing of the federal court action as one of his bases for breach of the standard of care, but Appellant confirmed that this was one of the express bases, and the record does reflect this. The court then moved on to the issue of damages, stating that he did not recall any evidence of

"Negligence alone does not warrant a recovery for a plaintiff in a legal malpractice case; there must also be damage proximately resulting from an attorney's malpractice." *Mogley*, 11 S.W.3d at 747.

Contrary to Appellant's argument, the record reflects that Appellant did not introduce substantial evidence to prove the element of damages as to the claim of negligence in filing suit in federal court. Appellant conceded in its argument on the motion that the only possible damages from the filing of the federal action were the modest attorney fees charged for that action. Appellant claimed that the "real damage" was that the filing of the action left Appellant in a weaker negotiating position in the contract action. The exhibit to which Appellant refers in its brief as "clearly" showing damages is nothing more than one of Respondents' invoices to Appellant, containing charges for both the federal action and the Kansas district court actions, without distinguishing between the work done for each. Appellant's main witness, Mr. Day, testified several times that, other than punitive damages, Appellant was only seeking damages from Respondents based on the liquidated damages clause from the underlying contract action.[9] Although he testified as to why he believed Respondents were negligent in filing suit in federal court, he did not claim any damages from that action. None of Appellant's experts testified as to any damages resulting from the filing of the

federal action. We find no error in the trial court's decision to grant the directed verdict. Point IV is denied.

In its final point, Appellant claims that the cumulative effect of the trial court's errors warrants reversal even if the errors, considered individually, do not. In certain rare circumstances, this may be warranted, *see Faught v. Washam*, 329 S.W.2d 588, 604 (Mo.1959),[10] but this is not such a case. Where, as here, "none of the points constitute error, [or to the extent that one might have, it was waived], the alleged errors cannot rise to the level of cumulative prejudicial error." *Elliott v. Mid–Century Ins. Co.*, 701 S.W.2d 462, 467 (Mo.App. W.D.1985) (citing *Vaeth v. Gegg*, 486 S.W.2d 625, 631 (Mo.1972)). Point V is denied.

The judgment is affirmed.

All concur.

---

damages resulting from the decision to file the action in federal court, asking Appellant if there was any such evidence. After hearing the parties' arguments on damages, the court sustained the motion.

9. Mr. Day stated that he had experts calculate the value of the liquidated damages in the underlying contract "[b]ecause I had been damaged by that amount, but I—by the acts of deVries [*sic*] and Jones." He later stated, "I want the value of the liquidated damages

which is what it actually costs and punitive damages for what they did." On cross-examination, he stated, "What I am seeking is liquidated damages that are applied to this that are in my contract that would have been enforced had it not been for their negligence."

10. *Overruled on other grounds by Tune v. Synergy Gas Corp.*, 883 S.W.2d 10, 22 (Mo. banc 1994).